Hopson *v.* Fowlkes.

\* HOPSON *v.* FOWLKES.

(*Jackson.* June 19, 1893.)

1. ESTATE BY THE ENTIRETY. *Severed by divorce of the owners.*

An estate by the entirety is converted into an estate in common by a divorce of the owners.

Cases cited and approved : Ames *v.* Norman, 4 Sneed, 682 ; 80 Ill., 197.

2. SAME. *Seven years' adverse possession bars wife's rights.*

The wife's title is barred, if, after the severance of an estate by the entirety by a divorce of the owners, the entire interest in the lands is sold under decree for the husband's debt, and thereafter held adversely by the purchaser for the term of seven years.

Code construed : §§ 3459–3461 (M. & V.); §§ 2763–2765 (T. & S.).

FROM DYER.

Appeal from Chancery Court of Dyer County. H. J. LIVINGSTON, Ch.

J. T. WOODSON and DRAPER & PARKS for Hopson.

RICHARDSON & HOOVER for Fowlkes.

MCALISTER, J. This is an ejectment bill. Complainants seek to recover a tract of land, consisting

---

\* The effect of a divorce on a tenancy by the entirety, as decided above, is in accordance with the doctrine declared in *Stelz* v. *Schreck* (N. Y.), 13 L. R. A., 325 and note.—REPORTER.

of eight hundred acres, situated in Dyer County. Complainant Mary E. Hopson was formerly the wife of one James Wilson, to whom she was married in 1854, and during said marriage, to wit, on September 8, 1856, one William M. Shipp, the father of Mary E., conveyed to her and her then husband, James Wilson, jointly, the tract of land in controversy. The said James Wilson died in November, 1886, and complainants claim that the legal title to said land is vested in the said Mary E. by right of survivorship, the land having been owned by her and her then husband, James Wilson, by entireties. It should be stated, in this connection, the said Mary E. was divorced from the said James Wilson on the thirtieth of October, 1860, and on the eighteenth of March, 1861, she intermarried with W. H. Hopson, her present husband.

It further appears that, on January 4, 1860, the land in controversy was attached by creditors of the said James Wilson, and, under proper decrees of the Chancery Court of Dyer County, it was sold to the defendants, Fowlkes and Ledsinger. The defendants, therefore, claim title to said land as purchasers at that judicial sale under the decree of the Chancery Court vesting title in them, and by continuous adverse possession.

Respondents say they are, and all the time have been since the date of confirmation of sale, the owners in fee of said tract of land, holding and claiming the same openly against all persons. Re-

spondents plead the statute of limitation of seven years, and they rely on said adverse claim, title, and possession of more than seven years as a complete defense to said action.

The Chancellor pronounced a decree in favor of defendants, and complainants have appealed.

It appears from the record that the defendant, H. L. Fowlkes, and P. C. Ledsinger, the ancestor of defendant Gilbert Ledsinger, purchased this land at the sale in the case of Ingram and Allen Walker against James Wilson, and that on the twenty-fourth of January, 1861, a decree was rendered confirming the sale, divesting title, and vesting the same in the purchasers.

It further appears that said purchasers went into immediate possession of the land, inclosed it with fences, erected improvements thereon, and have remained in continuous and adverse possession of the same up to the institution of the present suit, which was commenced on the twelfth of November, 1888—about twenty-six years after the defendants purchased and took possession of said land.

Under the operation of the first section of the Act of 1819, Ch. 28 (M. & V., § 3459), an adverse possession of seven years under a deed, grant, or other title purporting to convey the fee, not only bars the remedy of the party out of possession, but vests the purchaser with a good and indefeasible title in fee to the land described in his assurance of title. Under the second clause of the first section of said Act (M. & V., § 3460), it is

-provided, viz.: "And, on the other hand, any person, and those claiming under him, neglecting for the said term of seven years to avail themselves of the benefit of any title, legal or equitable, by action at law or in equity effectually prosecuted against the person in possession, as in the foregoing section, are forever barred." The second section of said Act of 1819 (Code, M. & V., § 3461), provides, viz.: "No person, or any one claiming under him, shall have any action, either at law or in equity, for any lands, tenements, or hereditaments, but within seven years after the right of action has accrued." Under the proof in this case, the defendants are protected by each and all of the provisions of the statute, unless it appears that the complainant was laboring under some disability that exempted her from its operation.

It is insisted on behalf of complainant, Mary E., that the defendants, by virtue of their purchase, only acquired such interest as her former husband, James Wilson, had in this land, and that the said James Wilson, having died on the eighth of November, 1886, the said Mary E. then became entitled to the whole estate by right of survivorship.

It has already been mentioned that the said Mary E. was divorced from her former husband, the said James Wilson, on the thirtieth of October, 1860, but her counsel insist that this divorce did not change the nature of her estate in this

land, which she still continued to hold by the entirety with the said James Wilson, with the contingent right to the whole estate in the event she survived him. It is insisted that her right of possession, and the devolution of the title did not accrue until the death of the said James Wilson, and that she is not affected by the lapse of time, and the statute of limitations.

It will be remembered that the decree of divorce was pronounced on the thirtieth of October, 1860, which was prior to the purchase by the defendants at the chancery sale, which occurred on the twenty-fourth of January, 1861.

What, then, was the effect of the divorce upon the tenure of complainant's title to this land?

In the case of *Harrer* v. *Wallner*, 80 Illinois, 197, the Supreme Court of Illinois had occasion to consider the question now before us. Judge Walker, in delivering the opinion of the Court, said: "Now, this estate by the entireties is peculiar. The possession of one is the possession of both. The estate is joint for life, and descends to or vests in the survivor absolutely, and in fee, and by the destruction of the estate of one it inures to the other. Neither can have partition, nor can either sell the estate so as to affect the rights of the other; and when their rights to the property are invaded, a suit for a recovery for the injury or for the property must be joint, because the property and the right to its enjoyment are joint during coverture." Then, appellee could not sue for

and recover any interest in the land, without join-
ing her husband in the action, until the coverture
ceased. It is unlike tenants in common, where
either may sue and recover for an injury to the
property, and may use the names of his co-tenants.

What effect, then, did the granting of the di-
vorce have on this estate, or the rights of the
parties therein? The relation of husband and wife
was thereby terminated, and with it all marital
duties. Their interest and duties from thenceforth,
as related to each other, were as though they
never existed. The estate by the entireties is es-
sentially a joint estate, although it differs in one
or two particulars therefrom.

The power to hold jointly arose from the fact
that they were married when the conveyance was
made. Had the marriage not existed, the parties
would have taken as tenants in common.

It was that circumstance, and that alone,
which gave to them the joint life estate and the
right to joint possession. When the very thing
which, by operation of law, gave them a joint
estate was destroyed, by operation of the same law
the joint estate ceased, and they then became
vested with an estate *per my* as tenants in com-
mon. They, by that act, and operation of law
flowing from it, are not jointly entitled to pos-
session, but, the unity of title and the unity of
estate no longer existing with the incidental right
of joint possession, it inevitably follows that they
then became tenants in common. The termination

of the marriage relation having wrought a change in the rights of the parties in the estate, the Courts should rather hold that the change is broad enough to convert it into an estate in common, than to hold that, whatever change was made, it left the right of survivorship.

But, on principle, we are satisfied the decree of divorce had the effect to make them tenants in common, and that appellee thereby becomes entitled to partition.

See also Bishop on Marriage and Divorce, Sec. 716; Freeman on Co-tenancy and Partition, Sec. 76.

We are not without authority on the question in this State.

In the case of *Ames* v. *Norman*, 4 Sneed, 682, it appeared that Ames and wife were seized of an estate in the land by entireties. Said land was sold at excution sale, in satisfaction of judgment against the husband, and the defendant, Norman, as a creditor of Ames, afterwards redeemed the land from the purchaser at said sale. After Norman's rights had become vested, the wife of Ames, the original judgment debtor, procured a divorce, and the question was whether the interest or title of the purchaser at execution sale was subject to be divested, or in any way affected, by a subsequent divorce *a vinculo matrimonii* to the wife. It was held that the subsequent divorce had no effect whatever upon the rights of such purchaser. It was held that the defendant, by his purchase, became invested with the right of the husband as

it existed at the time of the sale—that is, a right
to occupy and enjoy the profits of the land, as
owner, during the joint lives of the husband and
wife, subject to the contingency that if the com-
plainant survives her former husband his estate
will then terminate, but, if the husband survives,
he will become absolute owner of the whole es-
tate."

The case at bar is to be differentiated from the
case of *Ames* v. *Norman in this important particular,
that in the present case it appears that the wife was
divorced prior to the date of defendant's purchase and
possession.* At that date the wife's status was that
of a *feme sole*, and her estate in this land had,
by operation of law, been changed from one by
the entirety to a tenancy in common. That Judge
McKinney, who delivered the opinion of the Court
in *Ames* v. *Norman*, recognized this distinction is
apparent from the following language. We quote
from his opinion, viz.:

"As one of the necessary results of the unity
of person in husband and wife, it has always
been held that where an estate is conveyed or de-
vised to them jointly, they do not take in joint
tenancy. Constituting one legal person, they can-
not be vested with separate or separable interests.
They are said, therefore, to take by entireties;
that is, each of them is seized of the whole es-
tate, and neither of a part. If the rights of hus-
band and wife in relation to an estate held by
entireties are not altered by the decree declaring

the divorce, what becomes of the joint estate? What are their respective rights in the future in regard to it? They are no longer one legal person; the law itself has made them twain. They are no longer capable of holding by entireties; the relation upon which that tenancy depends has been destroyed. The one legal person has been resolved, by judgment of law, into two distinct individual persons, having in the future no relation to each other; and with this change of their relation must necessarily follow a corresponding change of the tenancy dependent upon the previous relation. As they cannot longer hold by a joint seizin, they must hold by *moieties*. The law, in destroying the unity of person between them, has, by necessary consequence, destroyed the unity of seizin in respect to their joint estate, for, independent of the matrimonial union, this tenancy cannot exist."

We think these principles are conclusive of this case. The decree of divorce, while it severed the unity of person of James and Mary E. Wilson, also severed their unity of estate in this land, making them tenants in common. That decree also removed the disability of Mary E. as a married woman, and left her free to institute proceedings for a partition of this land, or otherwise to assert her rights therein. She neglected to take any steps, and the bar of the statute was complete when the present suit was instituted. It may be remarked, in conclusion, that the whole groundwork of complainant's bill is based upon the as-

45—8 P

sumption that complainant, Mary E., was not a party to the original attachment suit, and had no notice of those proceedings. This assumption is earnestly controverted by the defendants. We do not, however, decide that question, as it is wholly immaterial, the title of Mrs. Hopson having been extinguished and her remedy barred by operation of the statute.

The decree of the Chancellor is affirmed.