Iris Jean **HICKS, Nancy Ellen Chadwell, Marcella Reed, and Alice Marie Ashbury, Plaintiffs–Appellants,**

v.

**Gifford Harold BOSHEARS, Defendant–Appellee.**

Supreme Court of Tennessee, at Knoxville.

Jan. 25, 1993.

813

David L. Buuck, Glen R. Claiborne, Claiborne, Davis, Buuck & Hurley, Knoxville, for plaintiffs-appellants.

Frank Dossett, LaFollette, for defendant-appellee.

OPINION

REID, Chief Justice.

This case presents an appeal from the judgment of the Court of Appeals sustaining summary judgment for the defendant. The plaintiffs are the children of the defendant Gifford Harold Boshears and his deceased wife, who was feloniously killed by Boshears. The suit seeks the declaration that the plaintiffs are the owners of certain real property that was owned by their parents as tenants by the entirety at the time of their mother's death in 1971. The trial court granted the defendant's motion for summary judgment submitted upon stipulation of facts and argument of counsel, and the Court of Appeals affirmed. The record does not support the summary judgment.

This case requires the accommodation of two historic and significant legal principles that, in the factual context presented, initially appear to be incompatible. These principles are: the maxim that a wrongdoer will not be allowed to benefit from his crime, and the characteristics of a tenancy by the entirety.

The first proposition, that on which the plaintiffs base their claim and which was found by the Chancellor and the Court of Appeals to be inapplicable to this case, is found in *Box v. Lanier*, 112 Tenn. 393, 79 S.W. 1042 (Tenn.1903). In that case, the personal representative of the husband,

who had feloniously killed his wife and then killed himself, claimed by right of inheritance, choses in action (benefits under an insurance policy) owned by the wife at the time of her death. In discussing the husband's right of inheritance, the Court discussed the principle of law on which plaintiffs rely:

It has been well said that there are certain general and fundamental maxims of the common law which control laws as well as contracts. Among these are: "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are adopted by public policy, and have their foundation in universal law administered in all civilized countries." These maxims embodied in the common law, and constituting an essential part of its warp and woof, are found announced both in text-books and in reported cases. Without their recognition and enforcement by the courts, their judgments would excite the indignation of all right-thinking people. The first of these maxims is applied in order to prevent one from taking the benefit of his own fraud. Why should not the last be enforced so as to forbid a party receiving the fruits of his own crime?

112 Tenn. at 409, 79 S.W. 1042. In applying the maxim to the facts of that case, the Court stated:

The last of these maxims cannot be reconciled with the rule insisted on by the administrator of [the husband's estate]. This rule, he insists, gives to him as a matter of law the proceeds of this policy. Though steeped in crime, and without reference to whether the prior death of [the wife] came naturally or was the result of the felonious assault of her husband, yet his contention is that the policy with its proceeds passed *jure mariti* to this husband, and upon his death to himself as the legal representative. If this be true, it logically follows that, if he had killed the wife for the purpose of setting in motion this rule, and under it becoming the absolute owner of her choses in action, his common-law right would

be enforced. Such a result, if essential, we think would be a reproach to the jurisprudence of the country, and should arouse the legislative conscience to speedy corrective legislation.

But we do not think that it is essential. The rule in question, though statutory in England, is a common-law rule of property with us, administered by reason of the relation of husband and wife and of the respective rights and obligations growing out of this relation. Carried to the length now insisted upon, it necessarily encounters, among others, the fundamental maxims already referred to that no man shall found a claim upon his own iniquity, or acquire property by his own crime. The rule thus contended for and these underlying principles of the common law cannot stand together. They are utterly irreconcilable if the present contention is sound. But we do not think it sound. To the contrary, we are satisfied that the rule and these maxims find their consistency in the flexibility of the common law and its power of adapting itself to new conditions and new cases. The present is one calling for a limitation on the rule in question, to wit, that it shall not apply where it is called into being by the crime of the husband. Thus qualified, there is perfect reconciliation between the rule and these maxims. Nor do we regard this as an enunciation of a new principle just called into life, but rather, as is said in *Jacob v. The State*, [22 Tenn. 493, 503 (1842)], one of those "great and immutable principles which have slumbered in their depositories because the occasion which called for their exposition had not arisen" heretofore.

*Id.* at 409–11, 79 S.W. 1042. Accordingly, the Court did not allow the husband to inherit from his murdered wife.

In response to the suggestion in *Box v. Lanier* for "speedy corrective legislation," Chapter 11, Public Acts of 1905 was enacted. *Carter v. Hutchison*, 707 S.W.2d 533, 536 (Tenn.App.1985). That legislation, as amended in 1976, is set out in T.C.A. § 31–1–106 (1984) and is declaratory of the common law enunciated in *Box v. Lanier*.

The second legal proposition, that whereby the defendant prevailed in the trial court and Court of Appeals, concerns the nature of a tenancy by the entirety, and is set forth in *Beddingfield v. Estill & Newman*, 118 Tenn. 39, 100 S.W. 108 (1906). In *Beddingfield*, a husband murdered his wife and then attempted to convey land which he and his wife had held as tenants by the entirety. Their children brought suit claiming that because of the husband's crime he forfeited his title to the property. In deciding the case, the Court discussed the nature of the interest held by each tenant:

First. Mary G. Baird, the mother of complainants, did not have any title to or estate in the lands sued for which could descend to, be inherited, or otherwise acquired by C.W. Baird, her husband, her heirs at law, or other persons, upon her natural death. C.W. Baird could not and did not inherit, acquire, or otherwise take any interest or estate in the lands from or through his wife, and would not have done so, had she died a natural death. The title which he claimed was acquired and vested in him by the conveyances made to him and his wife previous to her death, and he did not attempt to convey anything acquired through or under her. Where land is conveyed to husband and wife to hold by entirety, the survivor, upon the death of the other, takes and becomes vested of the entire estate—a fee-simple estate—by virtue of the grant or deed conveying the property to them; the interest of the deceased being terminated by his or her death. This is an ancient, familiar, and well established doctrine of the common law, and enforced in this and all of the other States of the Union, so far as we are informed.

And again:

"The estate of a husband and wife is a unit, not made up of any divisible parts subsisting in different natural persons, but an indivisible whole, vested in two persons who are actually distinct, yet who according to legal intendment, are one and the same. On the death of husband or wife, the survivor take [sic] no new estate or interest—nothing that was not in him or her before. It is a mere change in the properties of the legal person holding—not of the legal estate holden."

In the case of *Johnson v. Lusk*, 46 Tenn., 115, [113] 98 Am.Dec., 445, it is said: "Where real estate is conveyed to husband and wife, they take but one estate, and, if one dies, the estate continues in the survivor. Nothing passes on the death of either the husband or the wife that may first die, but by a condition in law the longest liver takes the entire estate."

118 Tenn. at 44–46, 100 S.W. 108 (citations omitted). The Court in *Beddingfield* held that the husband took no additional interest in the property by surviving his wife, and therefore, there was no violation of the statute prohibiting a murderer from acquiring property as a result of his crime. The Court stated, "We do not think that either the common law rule or statute, here invoked, apply to this case," *id.* at 44, 100 S.W. 108, and found that the two legal principles, the nature of the survivor's interest in a tenancy by the entirety and the statute prohibiting a murderer from profiting by his ill deed, were mutually exclusive.

In the case at bar, the Court of Appeals relied on the reasoning in *Beddingfield*, and found that the statute was not applicable to the termination of the right of survivorship caused by the death of the wife. However, it appears that in *Beddingfield*, the court did not have before it the statute as enacted, and it further appears that because there is a substantial enlargement of the surviving tenant's interest in property incident to the conversion of a tenancy by the entirety into a fee simple estate, the proper interpretation of the statute reveals that it is applicable to the facts of the case before the Court.

The discrepancies between the language relied upon by the Court in *Box v. Lanier*, and the statute are not insignificant. The subsequent amendment to the statute also is worth noting. Consequently, all three are reproduced as follows: the "statute" relied upon in *Beddingfield*:

That any person who shall feloniously kill, conspire with another to kill, or procure to be killed, any one from whom

such person so killing, or conspiring to kill, or procuring to be killed, would inherit property of any kind, belonging to such deceased person at the time of death, or who would take said property by deed, will or otherwise, at the death of deceased, shall forfeit all right, interest and estate in and to said property, and that the same shall go to such other person or persons as may be entitled by the laws of descent and distribution, or by will, deeds or other conveyance made by the deceased when in life.

Chapter 11, Public Acts of 1905, as enacted and in effect when *Beddingfield* was decided:

That any person who shall hereafter kill, or conspire with another to kill, or procure to be killed, any other person from whom such person so killing or conspiring to kill, or procuring said killing, would inherit the property, real, personal, or mixed, or any part thereof, belonging to such deceased person at the time of death, or who would take said property by deed, will, or otherwise, at the death of the deceased, shall forfeit all right, interest and estate in, and to said property, and the same shall go to such other persons as may be entitled thereto by the laws of descent and distribution, or by will, deed, or other conveyance duly executed by the deceased in his or her lifetime; provided that this Act shall not apply to any such killing as may be done by accident, or in self-defense.

T.C.A. § 31–1–106 (1984):

Any person who shall kill, or conspire with another to kill, or procure to be killed, any other person from which the first named person would inherit the property, either real or personal, or any part thereof, belonging to such deceased person at the time of his death, or who would take the property, or any part thereof, by will, deed, or otherwise, at the death of the deceased, shall forfeit all right therein, and the same shall go as it would have gone under the provisions of § 31–2–104, or by will, deed or other conveyance, as the case may be, provided, that this section shall not apply to any such killing as may be done by accident or in self-defense.

The terms of the statute enacted do not require the conclusion that the statute is inapplicable to the termination of the tenancy by the entirety caused by the wife's murder. The Court emphasized in *Beddingfield* that the husband did not "inherit, acquire, or otherwise take any interest or estate in the lands from or through his wife." 118 Tenn. at 45, 100 S.W. 108. However, the statute's application is not so narrow as to limit forfeiture to property taken "from or through his wife." The forfeiture also applies to "any person who ... would *take* said property by deed, will or *otherwise*, at the death of the deceased." (Emphasis added.) The Court stated in the same paragraph:

Where land is conveyed to husband and wife to hold by entirety, the survivor, upon the death of the other, takes and becomes vested of the entire estate—a fee-simple estate—by virtue of the grant or deed conveying the property to them; the interest of the deceased being terminated by his or her death.

*Id.* Central to this description of the process whereby the tenancy by the entirety is converted into a fee simple estate are the phrases "takes and becomes" and "being terminated," which denote the passing of certain rights in and to the property.

Similar expressions are the operative words of Chapter 11, Public Acts of 1905. The statute reduced to the provisions relevant to this case would read as follows:

Any person who shall ... kill ... any other person from whom such person so killing ... would inherit the *property, ..., or any part thereof,* belonging to such deceased person at the time of death, *or* who would *take said property* by deed, will *or otherwise,* at the death of the deceased, shall forfeit all right, interest and estate in, and to said property.... (Emphasis added.)

The language of the statute and the description of the conversion of a tenancy by the entirety into a fee simple found in *Beddingfield* are not incompatible. Analysis of the statute reveals that "take" is parallel with "inherit," so "take" means something different from "inherit." "Oth-

erwise" is in the disjunctive with "will" and "deed," so it contemplates "taking" by some legal means other than by will or deed. Likewise, "right" means something different from "interest" and "estate." "Any part thereof" appearing in the statute, reasonably could apply to the interest which constitutes the difference between a tenancy by the entirety and a fee simple estate, that described in *Beddingfield* as "the interest of the deceased being terminated by his or her death." "Take" in the statute reasonably could have the same meaning as "takes and becomes vested" in the Court's description of the conversion from a tenancy by the entirety into a fee simple in *Beddingfield,* and "otherwise" in the phrase "deed, will or otherwise," reasonably could include "the termination of a tenancy by the entirety" in the *Beddingfield* description.

The amended statute, which like the original statute was intended to be declaratory of the common law, is even more susceptible to the interpretation suggested herein. "[T]ake said property by deed, will or otherwise" in the second clause of the statute, was changed to read "take the property, or any part thereof, by will, deed, or otherwise"; "shall forfeit all right, interest and estate" was changed to "shall forfeit all right therein"; and "by will, deed, or other conveyance duly executed by the deceased in his or her lifetime" was changed to "by will, deed or other conveyance, as the case may be." The first change leaves no doubt that "take," which has been seen to mean something different from "inherit," is applicable to more than the alienation of a vested estate by will or deed. The second change, in which "right" replaced "right, interest and estate," emphasizes that the statute is not limited in effect to interests and estates. The change from "will, deed, or other conveyance duly executed by the deceased in his or her lifetime" to "will, deed or other conveyance, as the case may be," expands the category of means by which the forfeited property may pass to persons other than the killer, and would include instruments whereby tenancies by the entirety are created.

Based on this analysis, the statute reasonably could be construed to provide:

Any person who shall kill any other person from whom such person so killing would inherit the real property, or any part thereof, belonging to such deceased person at the time of death, or who would take such real property, or any part thereof, *including the interest of a deceased tenant by the entirety,* by deed, will or otherwise, *including the termination of a tenancy by the entirety,* at the death of the deceased, shall forfeit all right, interest and estate in and to said property, *including the right to have the tenancy by the entirety converted into a fee simple estate.*

The majority of jurisdictions recognize as a property interest the benefit that accrues to the surviving tenant, on the death of the other tenant by the entirety, and prevent the surviving killer from obtaining this benefit. Though no consensus among the jurisdictions exists on the treatment of the killer's remaining interest, the analysis made in those jurisdictions holding that a tenancy by the entirety becomes a tenancy in common upon the murder of a tenant is consistent with our statute.

For instance, in *Grose v. Holland,* 357 Mo. 874, 211 S.W.2d 464 (Mo.1948), a husband murdered his wife, and then claimed complete ownership of property that they had held as tenants by the entirety. The plaintiffs, heirs of the deceased wife, claimed that the husband should not be allowed to profit by his wrongful act. That court held that the fiction of complete ownership in the whole of the entirety property must give way to the equitable principle that no one shall be permitted to profit by his own crime. *Id.* 211 S.W.2d at 466–67. Finding that the husband "did acquire a practical, substantial benefit" by the murder, the court held that the property descends as if it were formerly held as tenants in common. *Id.; see also Estate of Sudduth,* 718 S.W.2d 149 (Mo.App.1986).

Likewise, in the case of *Luecke v. Mercantile Bank of Jonesboro,* 286 Ark. 304, 691 S.W.2d 843 (1985), a husband killed his wife and then committed suicide. The plaintiff asked that court to impose a constructive trust on the assets of the hus-

band's estate, including property held as tenants by the entirety, for the benefit of the wife's estate, as restitution for the husband's wrongful act. The court found that the "logical conclusion was that the murder/suicide severed the marital relationship and the parties became tenants in common, entitling each to recover one-half of the property." *Id.* 691 S.W.2d at 845.

■ Accordingly, in the case before the Court, the statute prohibits the defendant from gaining the conversion of his tenancy by the entirety into a fee simple estate. Instead, the tenancy by the entirety is converted into a tenancy in common by the defendant's act in feloniously killing the other tenant. The result is that an undivided one-half interest in the property is owned by the defendant, and an undivided one-half interest descends by "the laws of descent and distribution, or by will, deed, or other conveyance" as the case may be. Chapter 11, Public Acts of 1905.

The conversion of a tenancy by the entirety into a tenancy in common at the time of the felonious murder of a spouse, prevents a person from turning an expectant interest into a vested interest by "kill[ing], or conspir[ing] with another to kill, or procur[ing] to be killed, any other person." This conclusion accommodates the two historic legal principles at issue: the equitable maxim that one should not be allowed to profit by wrongdoing, codified in the statutory prohibition against a killer taking or inheriting property from his victim, and the ownership of property as tenants by the entirety. T.C.A. §§ 31–1–106, 108 (1984).

■ This interpretation does not, as contended by the defendant, violate Article 1, Section 12 of the state constitution by allowing a forfeiture of vested interest in land. As discussed above, the defendant's interest in the property at the time of the murder was not a fee simple estate. He has no constitutional right to have the tenancy by the entirety converted into a fee simple by his felonious act. T.C.A. § 31–1–106 only prohibits the conversion of a tenancy by the entirety into a fee simple estate by his criminal act to his benefit. The interest that he already possessed, an undivided interest in the property equally

shared with his wife, is preserved and converted into a non-contingent estate.

■ This conclusion also is consistent with the treatment of tenancies by the entirety in other areas of the law. At common law and in Tennessee, divorce converts a tenancy by the entirety into a tenancy in common. "Where husband and wife hold by the entireties and the marriage is ended by divorce, the tenancy also comes to an end and is converted into a tenancy in common." C. Moynihan, *Introduction to the Law of Real Property* 232 (1962). In *Hopson v. Fowlkes,* 92 Tenn. 697, 23 S.W. 55 (1893), an action for ejectment, the land was owned by husband and wife by the entireties when they were granted a divorce. The Court stated:

The estate by the entireties is essentially a joint estate, although it differs in one or two particulars therefrom.

The power to hold jointly arose from the fact that they were married when the conveyance was made. Had the marriage not existed, the parties would have taken as tenants in common.

It was that circumstance, and that alone, which gave to them the joint life estate and the right to joint possession. When the very thing which, by operation of law, gave them a joint estate was destroyed, by operation of the same law the joint estate ceased, and they then became vested with an estate *per my* as tenants in common. They, by that act, and operation of law flowing from it, are not jointly entitled to possession, but, the unity of title and the unity of estate no longer existing with the incidental right of joint possession, it inevitably follows that they then became tenants in common.

92 Tenn. at 702, 23 S.W. 55. *See also Cline v. Cline,* 186 Tenn. 509, 212 S.W.2d 361, 362 (1948). The Court further held, "the decree of divorce had the effect to make them tenants in common...." 92 Tenn. at 703, 23 S.W. 55.

■ The Uniform Simultaneous Death Act effectively converts a tenancy by the entirety into a tenancy in common. T.C.A. § 31–3–104 (1984) provides:

Where there is no sufficient evidence that two (2) joint tenants or tenants by the entirety have died otherwise than simultaneously, the property so held shall be distributed one-half (½) as if one had survived and one-half (½) as if the other had survived. If there are more than two (2) joint tenants and all of them have so died, the property thus distributed shall be in the proportion that one bears to the whole number of joint tenants.

In *Brundige v. Alexander*, 547 S.W.2d 232 (Tenn.1976), the Court discussed the effect of the Act:

The usual rule that the interest of a tenant by the entireties cannot be passed by will has no application to this case. Due to the simultaneous death of the tenants, there is no survivor, and, hence, the normal devolution of such property is frustrated.

*Id.* at 235 (citations omitted). The Court held in that case that when the tenants by the entirety die simultaneously, or otherwise come within the meaning of the Uniform Simultaneous Death Act, that statute controls the disposition of property held by decedents as tenants by the entirety.

In *Conner v. Holbert*, 49 Tenn.App. 319, 354 S.W.2d 809 (1961), application of the statute codified as T.C.A. § 31-1-106 prevented the vesting of the right to curtesy. In that case, the husband who feloniously killed his wife was denied the right to curtesy in property owned by the wife in fee. The Court rejected the claim that such denial was the forfeiture of an estate forbidden by the Tennessee Constitution. The Court found that the husband had "a status entitling him to an estate by the curtesy consummate on the contingency that his wife dies," *id.* 354 S.W.2d at 812, and held that, under the statute, his felonious murder of the wife prevented the contingent right from becoming a vested estate.

Though perhaps not so persuasive as the above, the Tennessee inheritance tax statute demonstrates the policy of the state with regard to tenancies by the entirety. T.C.A. § 67-8-305(a)(1) (1989) treats tenancies by the entirety as though each tenant owned a one-half undivided interest in fee.

Pursuant to that statute, upon the death of a tenant by the entirety, one-half of the value of the property held by the entirety is included in determining the value of the net taxable estate.

This decision in no way affects the existence or characteristics of tenancies by the entirety in Tennessee. Indeed, a prior decision to abolish that estate was quickly recognized as an unfortunate mistake which "released a veritable Pandora's box of legal pandemonium." *Robinson v. Trousdale Co.*, 516 S.W.2d 626, 628-29 (Tenn. 1974).

The judgments of the Court of Appeals and the trial court are reversed, and judgment will be entered granting summary judgment for the plaintiffs.

The costs are taxed against the defendant.

DROWOTA, DAUGHTREY, O'BRIEN and ANDERSON, JJ., concur.