IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 23, 2025 Session

## SHIRLEY JEAN CUPPLES BLANKENSHIP v. CHARLES GARY BLANKENSHIP SR. AND CHARLES GARY BLANKENSHIP II v. SHIRLEY JEAN CUPPLES BLANKENSHIP

**Appeal from the Chancery Court for Gibson County
No. H6329, H6634  Michael Mansfield, Chancellor**

_____

**No. W2024-01248-COA-R3-CV**
_____

This appeal arises from the death of the husband during a divorce proceeding. While the divorce was pending, the spouses sold real property they owned as tenants by the entirety and deposited the proceeds with the clerk of the court pursuant to an agreed order. Subsequently, the husband died and the wife filed a motion to dismiss the case and to distribute the proceeds. The chancery court determined that the husband's death abated the divorce proceedings and that the proceeds had been owned by the spouses as tenants by the entirety. Thus, the court granted the motion to dismiss and determined that the wife was entitled to distribution of the proceeds as the surviving tenant by the entirety. The spouses' son, acting as administrator of the husband's estate, appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which KENNY W. ARMSTRONG and VALERIE L. SMITH, JJ., joined.

Michael R. Flynn, Germantown, Tennessee, for the appellants, Charles Gary Blankenship II and Probate Advance, LLC.

Jonathan O. Steen, Nicholas B. Latimer, and Sara E. Barnett, Jackson, Tennessee, for the appellee, Shirley Jean Cupples Blankenship.

## OPINION

### I.      Facts and Procedural History

Charles Gary Blankenship Sr. ("Husband") and Shirley Jean Cupples Blankenship

("Wife") were married on August 22, 1981, in Jackson, Tennessee.  One child was born of the marriage, Charles Gary Blankenship II ("Son").  Son is serving as the administrator of Husband's estate and is one of the appellants in this matter.  During the marriage, the spouses obtained the following pieces of real property in Humboldt, Tennessee: 157 Pleasant Hill Road, 3855 East End Drive, and a lot adjacent to the 3855 East End Drive property (collectively "the Properties").  The spouses owned the Properties as tenants by the entirety.

On March 6, 2020, Wife filed a complaint for divorce in the Madison County Chancery Court.  The spouses later agreed for the case to be transferred to the Gibson County Chancery Court.  Litigation ensued, and on September 30, 2022, Husband filed a motion requesting that a guardian ad litem be appointed on his behalf.  The motion was granted by order entered on January 20, 2023.  The guardian ad litem subsequently submitted a report explaining that Husband had experienced several health issues and recommended that Son be appointed as conservator over Husband's person and that a certified public accountant be appointed as conservator over his property.

On January 5, 2023, an "Agreed Order" was entered in which the spouses agreed that the proceeds derived from the sale of any marital property would be paid to the Clerk and Master of the Chancery Court of Gibson County.  Although it is unclear from the record when this occurred, the spouses subsequently sold the Properties.  The proceeds derived from the sale of the Properties were deposited with the Gibson County Clerk and Master.

On August 15, 2023, Husband died prior to a final decree of divorce having been entered.  Wife filed a "Motion to Dismiss and for Distribution of Funds" on September 8, 2023, in which she asserted that Husband's death abated the divorce proceedings.  Wife also claimed that the proceeds derived from the sale of the Properties had been owned by the spouses as tenants by the entirety and thus the proceeds had "vested" in her upon Husband's death as the surviving tenant by the entirety.  Meanwhile, on October 27, 2023, Son filed a verified complaint in his capacity as the administrator of Husband's estate in the Chancery Court of Hamilton County, Tennessee.[1]  The complaint alleged that the funds being held by the Gibson County Clerk and Master were assets of Husband's estate.  Son further sought an order enjoining Wife from obtaining the funds pending resolution of the complaint.  This case was eventually transferred to the Gibson County Chancery Court.  Subsequently, the court entered an order consolidating the divorce proceeding, the above-described action filed by Son, and a "Probate Action" Son had also filed in the Hamilton County Chancery Court.  The court determined that all three cases were predicated on the disposal of a single issue: "who is entitled to receive disbursement of the marital funds deposited in the registry of the Clerk and Master in the divorce action."  The order also set the matter for hearing on April 2, 2024.

---

[1] It appears from the record that at some point Husband moved to Hixson, Tennessee, which is located in Hamilton County.  Son also states in his brief that he currently resides in Hamilton County.

We have not been provided with a transcript of the proceedings or a statement of the evidence detailing the events of the scheduled hearing. However, it appears from the chancery court's final order that this hearing did take place. Additionally, the attorneys representing the parties at oral argument in the present appeal agreed that the factual issues were stipulated by the parties at this hearing. Counsel also agreed that neither side called or attempted to call any witnesses or otherwise present any evidence during the hearing. The chancery court granted Wife's motion by order entered April 17, 2024. The court held that "the [spouses'] divorce action, along with any ancillary matters, abated upon Husband's death." The court also found that, because the spouses were still married when husband passed away, the Properties had been "held by the [spouses] by the entirety" and thus "the proceeds from the joint sale of such marital property were also held by the entireties at the time of Husband's death." Accordingly, the chancery court determined that Wife was "entitled" to the proceeds and granted the motion to distribute the funds to her.

On May 16, 2024, Son filed a motion to alter or amend the judgment, asserting that the chancery court erred when it did not consider the intent of the parties in making its ruling. He also asserted that the intent of the spouses was a factual determination and that no evidence regarding the intent of the spouses had been presented and no findings had been made. Accordingly, Son requested that the order be altered or amended to permit the introduction of such proof. It appears that after this motion was filed, another hearing was held, although there is no transcript of said hearing in the record. Regardless, it appears that during the hearing, Probate Advance, LLC, the second appellant in this matter, made an oral motion to intervene in the case.[2] The motion to intervene was granted by an order entered on July 19, 2024. However, the chancery court also entered an order denying Son's motion to alter or amend the judgment that same day. Subsequently, Son and Probate Advance, LLC filed this appeal.

## II. Issues Presented

The appellants have presented the following issues on appeal, which we have taken from their brief:

1. Whether the [t]rial [c]ourt was correct in ruling that that the proceeds from the sale of real property held by Charles G. Blankenship, Sr. (now deceased) and Shirley Blankenship as tenants-by-the entirety retained this status upon the sale of the real property pursuant to a Consent Order of Sale entered by the [spouses] during the pendency of a divorce proceeding.

---

[2] Probate Advance, LLC has provided Son with several cash advances in exchange for an assignment of a portion of his rights to the distribution of Husband's estate.

2. Whether the Trial Court erred in not requiring proof regarding the circumstances and/or intention of the [spouses] relating to the sale of the property.

For the following reasons, we affirm the judgment of the chancery court.

### III. Discussion

This appeal derives from the grant of a motion to dismiss filed in a divorce proceeding after the death of a spouse. Neither party has challenged the decision to grant the motion based on the abatement of the action due to Husband's death. Rather, the challenge is limited to the distribution to Wife of the proceeds derived from the sale of the Properties. As this is a non-jury case, we will review any findings of fact "*de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see In re Est. of Fletcher*, 538 S.W.3d 444, 448 (Tenn. 2017). "However, our review of the court's legal conclusions is *de novo* with no presumption of correctness." *Harris for Richey v. Richey*, No. M2021-00331-COA-R3-CV, 2021 WL 6054819, at *4 (Tenn. Ct. App. Dec. 21, 2021) (citing *In re Est. of Fletcher*, 538 S.W.3d at 448).

The appellants' argument concerns the form of concurrent ownership in which the spouses owned the proceeds. As our state Supreme Court has previously explained, "Tennessee recognizes three basic forms of concurrent ownership in real property: joint tenancy, tenancy in common, and tenancy by the entirety." *Bryant v. Bryant*, 522 S.W.3d 392, 399 (Tenn. 2017). A "[t]enancy by the entirety is a form of property ownership unique to married persons." *In re Est. of Fletcher*, 538 S.W.3d at 448. In a tenancy by the entirety the co-tenants are each seised of the whole in fee simple, and as a result, "upon the death of one spouse, the survivor continues to own the whole in fee simple." *Id.* (quoting *Bryant*, 522 S.W.3d at 400). "[T]he laws of descent and distribution do not apply" and no part of the property passes to the deceased spouse's estate. *In re Est. of Fletcher*, 538 S.W.3d at 448. Notably, "[m]arried couples can own both real property and personal property . . . as tenants by the entirety." *Id.*; *see also Campbell v. Campbell*, 66 S.W.2d 990, 992 (Tenn. 1934).

The parties agree that Husband and Wife owned the Properties as tenants by the entirety. However, the parties disagree on the form of concurrent ownership in which the spouses owned the proceeds from the sale of the Properties. Wife avers that the spouses owned the proceeds as tenants by the entirety, whereas the appellants aver the tenancy by the entirety was severed when the proceeds were placed with the Clerk and Master, and thus the spouses owned the proceeds as tenants in common. If Wife is correct, then she holds a fee simple interest in the entire proceeds as the surviving spouse. However, if the spouses owned the proceeds as tenants in common, only a portion will vest in her with the remainder passing to Husband's estate.

"Severance is the termination of a tenancy 'by any act which is inconsistent with its continued existence, or which operates to destroy its essential unities or one or some of them.'" *Bryant*, 522 S.W.3d at 401 (quoting W. W. Allen, Annotation, *What Acts By One or More of Joint Tenants Will Sever or Terminate the Tenancy*, 64 A.L.R.2d 918, § 2 (1959) (footnote omitted); 20 AM. JUR. 2d *Cotenancy and Joint Ownership* § 21 (2015)). We have previously stated that, "once a tenancy by the entirety is created, it can be terminated only when both convey, when one spouse dies and the survivor becomes owner of the whole, or when the survivorship is dissolved by divorce and the parties become tenants in common in the property." *White v. Watson*, 571 S.W.2d 493, 495 (Tenn. Ct. App. 1978); *see also Simpson v. Fowler*, No. W2013-02109-COA-R3-CV, 2014 WL 1601137, at *9 (Tenn. Ct. App. Apr. 22, 2014); *Tarver v. Ocoee Land Holdings, LLC*, No. E2010-01759-COA-R3-CV, 2011 WL 12701893, at *6 (Tenn. Ct. App. Sept. 19, 2011)). Additionally, our state Supreme Court has also held that funds withdrawn "from a joint bank account held as tenants by the entirety . . . cease to be held by the entirety." *In re Est. of Fletcher*, 538 S.W.3d at 454. However, "[i]f property held as tenants by the entirety is conveyed, the proceeds of the property are held in the same manner, absent any agreement or understanding to the contrary." *Heirs of Ellis v. Est. of Ellis*, No. M1999-00897-COA-R3-CV, 2001 WL 356714, at *4 (Tenn. Ct. App. Apr. 11, 2001), aff'd, 71 S.W.3d 705 (Tenn. 2002); *see also Burt v. Edmonds*, 456 S.W.2d 342, 345 (Tenn. 1969); *White*, 571 S.W.2d at 495.

The appellants claim that the unities of title, possession, and marriage were severed upon the sale of the Properties and deposit of the proceeds with the Gibson County Clerk and Master. Additionally, the appellants claim that the spouses agreed to terminate the tenancy by the entirety upon the sale of the Properties. We address each argument in turn.

### (1) Severance of the Unities

First, we consider the appellants' claim that "upon the sale of the properties, the unities required for a tenancy by the entirety were severed." Specifically, the appellants contend that the unities of possession and title were severed when the proceeds were deposited with the Gibson County Clerk and Master as "neither [spouse] had title nor possession of the proceeds" and "[n]either [spouse] had unfettered access to the funds." Additionally, the appellants contend that "[t]he unity of marriage was no longer in existence" when the Properties were sold as "the marital relationship and the love, affection and trust had been severed."

We first consider the unity of title. Black's Law Dictionary defines the unity of title as, "[t]he requirement that all joint tenants must acquire their interests under the same instrument." Black's Law Dictionary (12th ed. 2024). The appellants assert that depositing the proceeds with the Gibson County Clerk and Master left the proceeds "titled to and held by the clerk." This argument is unconvincing. As stated above, the proceeds of the sale of property held as tenants by the entirety retain this style of concurrent ownership "absent

an agreement or understanding to the contrary." *Heirs of Ellis*, 2001 WL 356714, at \*4; *Burt*, 456 S.W.2d at 345; *White*, 571 S.W.2d at 495. Thus, the spouses were presumed to maintain the tenancy by the entirety in the proceeds, despite the real property having been sold. Additionally, the subsequent deposit of the proceeds with the Clerk and Master did nothing to transfer title to the proceeds as the spouses remained the legal owners. The property was merely held in contemplation of the divorce proceedings in accordance with the agreed order. Further, that agreed order did not state any intention of the spouses to alter their joint ownership of said proceeds. The appellants have not made any cogent argument demonstrating that legal title of the proceeds was transferred to the Clerk and Master upon deposit.

Next, we turn to the unity of possession. The appellants claim that the unity of possession was severed once the proceeds were placed with the Gibson County Clerk and Master because "[n]either [spouse] had unfettered access to these funds . . . and the funds could only be released upon a Court order." Black's Law Dictionary defines the unity of possession as "[t]he requirement that each joint tenant must be *entitled to* possession of the whole property." Black's Law Dictionary (12th ed. 2024) (emphasis added). Again, the appellants have not demonstrated how the deposit of the funds with the Gibson County Clerk and Master would have affected the unity of possession. While it is true that the spouses were unable to reach the proceeds absent a court order, they maintained equal rights to the whole of the proceeds. Neither spouse had any greater right to the proceeds than the other, and the spouses agreed to the arrangement. The appellants have not submitted any argument or case law explaining why the deposit of the funds with the Clerk and Master severed this unity but have only made a bare assertion that the unity was severed.

The appellants also claim that the unity of marriage was severed. Initially, we would note that marriage is not a unity in the same sense as the unities of title or possession. Rather, it is predicated on the "legal notion of the unity of two persons who are husband and wife." *McGhee v. Henry*, 234 S.W. 509, 509-10 (Tenn. 1921). "Tenancy by the entirety is based on the concept that those who are married are not separate persons; rather, they 'are but one person.'" *Bryant*, 522 S.W.3d at 400 (quoting *Tindell v. Tindell*, 37 S.W. 1105, 1106 (Tenn. Ch. App. 1896)). However, the argument is certainly cogent in that the dissolution of a marriage does result in the dissolution of a tenancy by the entirety, though this has typically been in the context of divorce which "coverts a tenancy by the entirety into a tenancy in common." *Hicks v. Boshears*, 846 S.W.2d 812, 818 (Tenn. 1993). Here, the appellants do not assert the spouses were divorced, but rather, that "the marital relationship and the love, affection and trust had been severed."

The appellants have cited only our state Supreme Court's case *McGhee v. Henry* to support this proposition. 234 S.W. at 509. The appellants rely on language from that opinion which provides that "[a]n estate by the entirety is one limited to the lifetime of the husband and wife; indeed, it is one limited to the continuance of *the relationship of husband*

*and wife.*" *Id.* (emphasis added). The appellants assert this language means that "[i]t is the relationship between the Husband and Wife, along with the concomitant love, trust and affection, which provides the basis of the tenancy by the entirety." Not only do we disagree with the appellants' interpretation of this case, their reliance upon *McGhee* in this instance is perplexing.

Notably, *McGhee* presented a situation in which spouses owned certain property as tenants by the entirety but "died simultaneously on the 13th day of January, 1919, by being burned up in a building." *Id.* The subsequent court case involved a partition proceeding brought by the wife's heir. *Id.* The Court determined that, as the spouses had died simultaneously, the property was to "descend as if husband and wife had been tenants in common." *Id.* at 510. The Court did not undertake any analysis to determine whether the love, trust, or affection between the spouses had been severed prior to their deaths or explain the effect such a severance would have had on the co-tenancy. *Id.* The appellants have not provided any subsequent case law interpreting the language from *McGhee* to stand for the proposition that a tenancy by the entirety is severed when the spouses no longer have any love, affection, or trust, and we have come across none in our review of the case law.

We are also unconvinced that the appellants' interpretation is consistent with the broader law of this state. As our state Supreme Court has previously stated, "the inception, duration, status, conditions, and termination of a marriage in Tennessee are subject to state legislative power and control." *Guzman v. Alvares*, 205 S.W.3d 375, 379 (Tenn. 2006). "Both grounds for divorce and defenses against divorce actions are statutory." *Chastain v. Chastain*, 559 S.W.2d 933, 934 (Tenn. 1977). There is no common law divorce in Tennessee. *Id.* It would be contradictory to these principles for us to determine that the marital relationship was severed based on a subjective finding of "the love, affection and trust" having been destroyed, rather than a decree of divorce having been entered.

Although neither party has referenced it, we find worth mentioning an analogous situation previously presented to this Court. In that case, we considered whether a husband "committed fraud or intended to deny [the wife] her share of the estate by his transfers" made for the benefit of his long-term companion prior to his death in 2010. *Simpson*, 2014 WL 1601137, at *7. The spouses had separated in the early 1990s but never divorced, and the husband had been in a long-term relationship with his companion since 1993. *Id.* at *4. In regard to the martial residence, which was titled to both the husband and wife, we found that it was owned by the spouses as tenants by the entirety and because the spouses had never divorced, the wife had always been "seized of the whole." *Id.* at *9. Therefore, we determined that "the house passed to her outside the estate." *Id.* No consideration was given to whether the spouses had maintained the love, trust, and affection typically associated with marriage during their approximately 20-year separation. *Id.* Likewise, here it would not be proper to assess subjective factors of love, affection, or trust because those factors do not have any bearing on the legal status of a couple as husband and wife.

To summarize, there is no case law supporting the appellants' reading of *McGhee* or the application of the analysis they have requested. Such an analysis would be unfeasible and would require a court to determine exactly what Appellee's counsel submitted at oral argument and "make factual findings of when that loving feeling was lost." We discern no error in the chancery court's ruling as to this issue.

### (2) Agreement to Terminate the Tenancy by the Entirety

We now turn to the appellants' claim that the spouses agreed to dissolve the tenancy by the entirety when they sold the properties. Notably, the appellants do not point to any express agreement made between the spouses. Rather, they assert that the spouses' intent to dissolve the tenancy by the entirety upon the sale of the properties was evidenced by the circumstances, specifically, the fact they were in the midst of a divorce.

To support this argument, the appellants point to our state Supreme Court's opinion in *Oliphant v. McAmis*, 273 S.W.2d 151 (Tenn. 1954). There, the Court determined that the unities forming a co-tenancy could be shown through methods other than documentary evidence. *Id.* at 374. The Court relied on its prior holding in *Sloan v. Jones* in which it determined that a tenancy by the entirety could be created by a joint deposit where intent of joint ownership could "'be inferred from the circumstances.'" *Id.* (quoting *Sloan v. Jones*, 241 S.W.2d 506, 507 (Tenn. 1951), *overruled by In re Est. of Fletcher*, 538 S.W.3d at 454). The Court went on to find that the evidence had "establishe[d] without any serious dispute a joint ownership of property by the deceased and his wife." *Id.* at 374-75. The appellants also rely on our case in *Boren v. Hill Boren PC*, No. W2021-01024-COA-R3-CV, 2023 WL 5120847, at *4 (Tenn. Ct. App. Aug. 10, 2023), *perm. app. denied* (Tenn. Mar. 7, 2024). There, this court relied on *Oliphant* to determine whether a recreational vehicle was owned by a husband and wife as tenants by the entirety and was therefore exempt from attachment execution to satisfy a debt owed from husband to his former law partners. *Id.* The court considered testimonial evidence from the husband and the wife, which went unrefuted, and determined this evidence demonstrated the spouses held the vehicle as tenants by the entirety. *Id.* at *5.

Both cases reflect a court's assessment of testimonial evidence and surrounding circumstances to determine whether a husband and wife intended to acquire or hold certain property as tenants by the entirety. Both cases also involve property that was titled to one of the spouses individually rather than property that was titled in the name of both spouses. Neither considers the dissolution of a tenancy by the entirety. The appellants have not provided any Tennessee case law in which a reviewing court has applied similar concepts to the dissolution of a tenancy by the entirety. Conversely, the trial court's ruling relied on very explicit Tennessee case law providing that the proceeds derived from the sale of property held as tenants by the entirety are held in the same manner "unless there was some expressed intention on the part of both tenants to create a different ownership." *White*, 571

- 8 -

S.W.2d at 495 (citing *Burt*, 456 S.W.2d at 345). Importantly, the appellants have not pointed to "some expressed intention," but rather, ask this court to infer the spouses' intentions.

However, the appellants claim that the *In re Est. of Fletcher* decision "limits the applicability" of this rule and "the principle upon which the holding is based is applicable to this matter, namely that the [spouses'] intention in maintaining a joint [asset] is of critical importance." 538 S.W.3d at 454. As explained above, in *In re Est. of Fletcher*, our state Supreme Court held that funds withdrawn "from a joint bank account held as tenants by the entirety . . . cease to be held by the entirety." *Id.* However, we fail to see how the analysis that led to this conclusion is applicable to the present circumstances. The *In re Est. of Fletcher* Court did not rely on the actions of the particular spouses to make a subjective determination of their intent. Rather, the Court determined that the "grant of authority [in forming a joint bank account] reflect[ed] the basic trust a husband and wife have in each other" and the expectation of each spouse that the other would "make regular withdrawals from the account without the need for approval from the non-withdrawing spouse in every transaction." *Id.* The Court based its treatment of the asset on generalized and objective intentions of spouses placing money into a joint account rather than a subjective finding of what the particular spouses involved in the case had intended when they placed their funds into a joint account. *Id.* Given that the *In re Est. of Fletcher* Court ruled based on these objective motivations and expectations rather than the subjective intentions cited by the appellants, we are unconvinced that it serves to authorize the analysis requested.

Further, even if we were to undertake such an analysis, there is no evidence contained in the record demonstrating that the spouses' intentions were to sever the tenancy. The appellants rely solely on the fact that the spouses were in the midst of a divorce to support their claims. The chancery court noted this in its final order but regardless determined that, because the spouses were still married at the time of Husband's death, the property was owned as tenants by the entirety. The appellants have not pointed to any other evidence contained in the record giving more credence to their claim. Notably, there is not a transcript of the April 2, 2024 hearing or a statement of the evidence contained in the record. However, counsel for the parties attested at oral argument in this appeal that they had "stipulated the facts" and neither party attempted to call a witness to testify before the chancery court or enter any other evidence. Thus, even if we were to attempt to consider the intentions of the spouses, we are left without any evidence like that which the *Oliphant* and *Boren* courts relied on in their well-reasoned decisions.

Additionally, the trial court did not err by "not requiring proof regarding the circumstances and/or intention of the [spouses] relating to the sale of the property" as raised in the appellants' second issue. We would again note that at oral argument, counsel for both parties agreed that at the April 2, 2024 hearing the parties stipulated the facts and neither party entered or attempted to enter any evidence. Thus, we fail to see how the

chancery court's actions could be deemed erroneous as an opportunity to present evidence was provided.  Having reviewed the record, we discern no error.  Therefore, the findings of the chancery court are affirmed.

## IV. Conclusion

For the foregoing reasons, the judgment of the chancery court is affirmed.  Costs of this appeal are taxed to the appellants, Charles Gary Blankenship II and Probate Advance, LLC, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE