# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 2, 2016 Session

# DARRYL F. BRYANT, SR. v. DARRYL F. BRYANT, JR.

**Appeal by Permission from the Court of Appeals
Chancery Court for Davidson County
No. 141059I        Claudia Bonnyman, Chancellor**

———————————————————

**No. M2014-02379-SC-R11-CV – Filed April 19, 2017**

———————————————————

We granted permission to appeal in this case to address whether a joint tenancy with an express right of survivorship can be severed by the unilateral actions of one of the co-tenants. The owner of the property at issue in this appeal executed a deed conveying the property to herself and to her son in a joint tenancy with right of survivorship. The same grantor later executed a quitclaim deed granting her interest in the property to her grandson (the son's child). After the grantor died, the son filed a declaratory judgment action against the grandson, claiming that the son was the rightful owner of the property in fee simple as the surviving joint tenant under the first deed. In response, the grandson asserted that the grantor's second deed severed the joint tenancy, conveyed the grantor's one-half interest to him, and destroyed the son's right of survivorship. The trial court granted the son's motion for summary judgment, and the Court of Appeals affirmed. We reverse. Following the common-law doctrine of severance, we hold that a joint tenancy with an express right of survivorship may be severed by the unilateral action of one of the co-tenants, and that doing so converts the estate into a tenancy in common and destroys the survivorship interests of the original joint tenants. In this case, the grantor's second deed, conveying her interest in the property to the grandson, severed the joint tenancy and destroyed the son's right of survivorship, so the son and the grandson own the property in equal parts as tenants in common.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Trial Court and Court of Appeals Reversed; Case Remanded for Further Proceedings**

HOLLY KIRBY, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK and ROGER A. PAGE, JJ., joined. SHARON G. LEE, J., filed a dissenting opinion.

Leroy Johnston Ellis, IV, Old Hickory, Tennessee, for the Defendant/Appellant Darryl F. Bryant, Jr.

Ronald B. Buchanan, Nashville, Tennessee, for the Plaintiff/Appellee, Darryl F. Bryant, Sr.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2006, James and Molly Bryant, husband and wife, purchased property on Hadley Avenue in Old Hickory, Davidson County, Tennessee ("the Property"). In February 2009, James Bryant died, and Molly Bryant became the sole owner of the Property.

A few months after Mr. Bryant's death, on June 9, 2009, Ms. Bryant executed a quitclaim deed that conveyed the Property to herself and her son, Plaintiff/Appellee Darryl Bryant, Sr. ("Son"), as joint tenants with an express right of survivorship. The deed to Ms. Bryant and Son states: "I, Molly Bryant, a widow, have this day bargained and sold, and do hereby transfer and convey unto Molly Bryant and Darryl Bryant[, Sr.,] for the purpose of creating a joint tenancy with right of survivorship, . . . all my estate, right, title, interest and claim in and to [the Property]."

Just over a year later, on September 2, 2010, Ms. Bryant executed another quitclaim deed on the same Property. This quitclaim deed purported to convey the Property to Son's child, Defendant/Appellant Darryl F. Bryant, Jr., who is Ms. Bryant's grandson ("Grandson"). The deed states that Ms. Bryant does "hereby quitclaim undivided interest, right, and title [in the Property] to [Grandson]." Both the June 2009 deed and the September 2010 deed were duly recorded with the Register of Deeds for Davidson County.

In November 2013, Ms. Bryant died at the age of eighty-nine. At the time of Ms. Bryant's death, Grandson was living with her in the home on the Property.

In July 2014, Son filed a complaint against Grandson in the Chancery Court of Davidson County, Tennessee, seeking a declaratory judgment and possession of the Property. In the complaint, Son averred that, because the June 2009 quitclaim deed granted Son a right of survivorship, he became the sole owner of the Property in fee simple upon Ms. Bryant's death. He asserted, "The only interest that [Ms. Bryant]

- 2 -

conveyed to [Grandson] was her survivorship interest whereby she would own the Property if she survived [Son]." Thus, Son contended, upon Ms. Bryant's death, Grandson was left with no interest in the Property. Son asked the trial court to enter "an order declaring that the Property is now vested entirely in [Son] and that [Grandson] has no ownership in the Property, legal or equitable, whatsoever." Son also sought an order requiring Grandson to vacate the Property. Soon after filing the complaint, Son filed a motion for summary judgment claiming that, on the undisputed facts, he was entitled to judgment as a matter of law.

In response, Grandson filed a motion to strike Son's summary judgment motion and to dismiss the complaint for failure to state a claim upon which relief could be granted. *See* Tenn. R. Civ. P. 12.02(6). Grandson claimed in his motion that, in the September 2010 deed, Ms. Bryant conveyed to him her one-half interest in the property and that this conveyance severed Son's right of survivorship. Grandson asserted that Son's complaint was "based on an improper legal premise that the co-tenants in a Joint Tenan[cy] with the Right of Survivorship are not at liberty to unilaterally terminate the Right of Survivorship." He contended that, when Ms. Bryant conveyed her interest to him (Grandson), Son and Grandson became equal owners in the Property as tenants in common. The trial court denied Grandson's motion to dismiss and scheduled a hearing date for Son's summary judgment motion.

In October 2014, the trial court conducted the scheduled hearing on Son's motion for summary judgment.[1] Ultimately, the court ruled in favor of Son. It approached the issue as one of first impression; looking to the law in other jurisdictions, the trial court decided to take guidance from the law in Michigan. Following Michigan law, the trial court held that a joint tenancy with an express right of survivorship is comprised of a joint life estate with dual contingent remainders and that the contingent remainders are not subject to being destroyed by the actions of a co-tenant. Slip Op. at 3-4 (following *Wengel v. Wengel*, 714 N.W.2d 371, 378 (Mich. Ct. App. 2006) (citing *Albro v. Allen*, 454 N.W.2d 85, 93 (Mich. 1990))). Accordingly, the trial court held, each co-tenant in a joint tenancy with right of survivorship "has the right to own the fee title upon the death of the other cotenant," and "[o]ne co[-]tenant should not have the right to destroy that right of survivorship by his/her unilateral action." *Id.* at 4. On that basis, the trial court granted summary judgment in favor of Son. Grandson appealed.

---

[1] The appellate record does not include a transcript of the hearing on Son's motion for summary judgment.

The Court of Appeals affirmed the trial court's decision, albeit on a different basis. *Bryant v. Bryant*, No. M2014-02379-COA-R3-CV, 2015 WL 5695207, at *4 (Tenn. Ct. App. Sept. 28, 2015). The appellate court reasoned that "Ms. Bryant's intent, as evidenced by the language she used in her deeds, determines the outcome in this case." *Id.* It first observed that the June 2009 deed plainly reflected Ms. Bryant's intent to convey to Son a joint tenancy with an express right of survivorship. The appellate court then pointed out that the September 2010 deed to Grandson included a reference to the June 2009 deed to Son. The reference was contained in the September 2010 deed's derivation clause, which gives information about the source of the grantor's title. The relevant part of the derivation clause stated: "Reference is also made to instrument number 20090611-0054308," which is the June 2009 deed. *Id.* Ms. Bryant's reference to the June 2009 deed in the September 2010 deed to Grandson, the Court of Appeals surmised, indicated an intent to convey to Grandson "her interest in the Property, including her right of survivorship, but only in the event that she outlived [Son]." *Id.* The appellate court explained: "Ms. Bryant would have had no reason to reference expressly her earlier deed to [Son] unless she wanted [Grandson] to be aware of the joint tenancy and survivorship interest she had already conveyed to his father." *Id.* It added, "If [Son] had predeceased Ms. Bryant, then [Grandson] would have become the fee simple owner of the Property upon [Son's] death." *Id.* Because Ms. Bryant predeceased Son, the appellate court concluded, Son "is the sole surviving joint tenant, and he now owns the Property in fee simple." *Id.* We granted Grandson's application for permission to appeal.

ISSUES AND STANDARD OF REVIEW

On appeal, Grandson presents four issues for our review:

1. Under Tennessee law, what are the characteristics of a joint tenancy with a right of survivorship? How may the right of survivorship be terminated in a joint tenancy?

2. Does the grantor's creation of a joint tenancy give rise to any contract rights between the joint tenants as suggested by the trial court?

3. Does the derivation clause in a deed show intent of the grantor as suggested by the Court of Appeals?

4. When two parties hold real property located in Tennessee as "joint tenants with right of survivorship," and one of those parties independently conveys all "interest, right, and title" to a third party, what is

- 4 -

the resulting estate in land between the original joint tenant and the third party?

We perceive the pivotal issue to be whether the joint tenancy with an express right of survivorship established in the June 2009 deed was severed by the actions of Ms. Bryant in executing the September 2010 deed to Grandson. If so, Son and Grandson own the Property in equal parts as tenants in common. If not, Son now owns the Property in fee simple as the surviving joint tenant under the June 2009 deed.

This appeal arises out of the trial court's grant of summary judgment, so we review the trial court's decision *de novo* with no presumption of correctness.[2] *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)); *Parker v. Holiday Hospitality Franchising*, 446 S.W.3d 341, 346 (Tenn. 2014). Summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Conversely, summary judgment should not be granted when there are genuine disputes of material fact. *Rye*, 477 S.W.3d at 264-65; *Parker*, 446 S.W.3d at 346. In the instant case, the material facts are not disputed. We are presented with only questions of law, which are reviewed *de novo*, affording no deference to the decisions of the lower courts. *See Rye*, 477 S.W.3d at 250.

## ANALYSIS

### Tenancies Under Common Law

Tennessee recognizes three basic forms of concurrent ownership in real property: joint tenancy, tenancy in common, and tenancy by the entirety. *See Griffin v. Prince*, 632 S.W.2d 532, 535 (Tenn. 1982). A brief review of these tenancies is helpful to our discussion.

At common law, the type of tenancy that results from a conveyance of real property to two or more persons depends on the whether the four unities—interest, title,

---

[2] In *Rye*, this Court overruled the summary judgment framework set forth in *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008), and reinstated summary judgment standards consistent with Rule 56 of the Federal Rules of Civil Procedure and the *Celotex* trilogy of cases. *Rye*, 477 S.W.3d at 264; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

time, and possession—exist at the time of conveyance. *Bennett v. Hutchens*, 179 S.W. 629, 631 (Tenn. 1915) (describing the four unities as having "one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession" (quoting 2 WILLIAM BLACKSTONE, COMMENTARIES 180)); 2 TIFFANY REAL PROP. § 418 (3d ed. 2016) (quoting 2 WILLIAM BLACKSTONE, COMMENTARIES 180). If the four unities exist at the time of the conveyance and the conveyance is made to a married couple, the conveyance results in a tenancy by the entirety, absent language indicating a contrary intent.[3] *Bennett*, 179 S.W. at 631. If the four unities exist but the conveyance is to unmarried persons, the conveyance results in a joint tenancy; by operation of law, a common-law joint tenancy includes a right of survivorship even when no words of survivorship are used in the granting instrument. *Peebles v. Peebles*, 443 S.W.2d 469, 470 (Tenn. 1969) (quoting *Jones v. Jones*, 206 S.W.2d 801, 803 (Tenn. 1947)); *Bunch v. Bunch*, No. 02A01-9705-CH-00106, 1998 WL 46217, at *1 (Tenn. Ct. App. Jan. 8, 1998) (citing *Jones*, 206 S.W.2d at 803); *see also Durant v. Hamrick*, 409 So. 2d 731, 742 (Ala. 1981) (Adams, J., dissenting) (commenting that "to say 'joint tenancy with right of survivorship' is redundant"). If, however, the four unities are *not* present at the time of the conveyance, the conveyance results in a tenancy in common, which does not include a right of survivorship. *See Runions v. Runions*, 207 S.W.2d 1016, 1017 (Tenn. 1948) (holding that, when a husband first acquired property and then conveyed it to his wife, they could not hold the property as tenants by the entirety or joint tenants because "the four unities did not coincide," so the deed created a tenancy in common with a right of survivorship).

There are important differences among the three types of common-law tenancies. We summarize the differences as background for our analysis.

A tenancy by the entirety is held exclusively by persons who are legally married. It is ancient in origin and remains firmly established in Tennessee.[4] *Griffin*, 632 S.W.2d at 534-35; *see* Tenn. Code Ann. §§ 36-3-505, 31-1-108. Tenancy by the entirety is based

---

[3] If the language of the granting instrument clearly demonstrates the grantor's intention that the husband and wife take the property as joint tenants or tenants in common, rather than as tenants by the entirety, this language will be effective. Absent such language, however, a conveyance to married persons "prima facie means that they are to hold by the entireties." *Myers v. Comer*, 234 S.W. 325, 326 (Tenn. 1921); *Thomason v. Smith*, 8 Tenn. App. 30, 33-34 (1928).

[4] "It is well settled in this state that personal property as well as realty may be owned by spouses by the entirety." *Griffin v. Prince*, 632 S.W.2d 532, 535 (Tenn. 1982) (citing *Campbell v. Campbell*, 66 S.W.2d 990, 992 (Tenn. 1934); *Smith v. Haire*, 181 S.W. 161, 165 (Tenn. 1915)).

on the concept that those who are married are not separate persons; rather, they "are but one person." *Tindell v. Tindell*, 37 S.W. 1105, 1106 (Tenn. Ct. App. 1896) (quoting *Den v. Hardenbergh*, 10 N.J.L. 42, 45 (1828)); *see Taul v. Campbell*, 15 Tenn. (7 Yer.) 319, 333 (1835) (noting that a husband and wife "take but one estate, as a corporation would take, being by the common law deemed but one person"). Consequently, co-tenants in a tenancy by the entirety do not hold their interest by moieties (by parts), they hold by the entirety: "Each is not seised of an undivided moiety, but both are . . . seised of the whole. They are seised, not *per my et per tout* [by the half and by the whole], but solely and simply *per tout* [by the whole]."[5] *Tindell*, 37 S.W. at 1106 (quoting *Den*, 10 N.J.L. at 45).

When property is held in a tenancy by the entirety, upon the death of one spouse, the survivor continues to own the whole in fee simple. Technically, then, the surviving spouse does not acquire the fee simple interest through a right of survivorship; the survivor "enjoys the whole [after the death of the other spouse], . . . not because any new or further estate or interest becomes vested, but because of the original conveyance, and of the same estate and same quantity of estate as at the time the conveyance was perfected." *Id.* (quoting *Den*, 10 N.J.L. at 45) (explaining that "[b]etween husband and wife, the *jus accrescendi* [right of survivorship] does not exist"); *see Cole Mfg. Co. v. Collier*, 31 S.W. 1000, 1001 (Tenn. 1895); *Moore v. Cole*, 289 S.W.2d 695, 698 (Tenn. 1956); *Taul*, 15 Tenn. (Yer.) at 336-37.

At common law, the primary difference between holding in joint tenancy and tenancy in common is that joint tenancy includes a right of survivorship between the co-tenants by operation of law, whereas tenancy in common does not. *See Peebles*, 443 S.W.2d at 470; *Bunch*, 1998 WL 46217, at *1. While a tenancy by the entirety can consist only of two persons seized of one estate, both joint tenancy and tenancy in common "impl[y] a plurality of persons" and "each of the owners has an undivided moiety, or other proportional part, of the whole premises." *Tindell*, 37 S.W. at 1106 (quoting *Den*, 10 N.J.L. at 45); *see Taul*, 15 Tenn. (7 Yer.) at 336 (citation omitted) (noting that, unlike a tenancy by the entirety, "[t]he estate of joint tenants is [a] unit, made up of divisible parts subsisting in different natural persons").

"Tenants in common are jointly seized of the whole estate, each having an equal right of entry and possession . . . ." *Moore v. Cole*, 289 S.W.2d 695, 697 (Tenn. 1956).

---

[5] To illustrate the point, the *Tindell* court explained, "In a grant to a husband and wife and a third person, the husband and wife take one half, and the other person takes the other half; and, if there be two other persons, the husband and wife take one third, and each of the others one third." *Tindell*, 37 S.W. at 1106 (quoting *Den*, 10 N.J.L. at 45).

Right of survivorship is not an incident of tenancy in common; however, the grantor may include in the instrument of conveyance express language attaching a right of survivorship to the tenancy in common. *See Runions*, 207 S.W.2d at 1017 ("Even a tenancy in common may have a right of survivorship attached to it if the grantor expresses an intention that it shall be so." (quoting *Mitchell v. Frederick*, 170 A. 733, 735-36 (Md. 1934))).

## Common-Law Doctrine of Severance

Severance is the termination of a tenancy "by any act which is inconsistent with its continued existence, or which operates to destroy its essential unities or one or some of them." W. W. Allen, Annotation, *What Acts By One or More of Joint Tenants Will Sever or Terminate the Tenancy*, 64 A.L.R.2d 918, § 2 (1959) (footnote omitted); 20 AM. JUR. 2d *Cotenancy and Joint Ownership* § 21 (2015). Because spouses in a tenancy by the entirety are treated as one person, a spouse in such a tenancy cannot sever it unilaterally by transferring a portion of the property without the assent of the other spouse, as doing so would destroy the survivor's right to own the whole. *Tindell*, 37 S.W. at 1106 (quoting *Den*, 10 N.J.L. at 45); *Taul*, 15 Tenn. (7 Yer.) at 336. In contrast, in a common-law joint tenancy, any joint tenant can, "at his pleasure, dispose of his share, and convey it to a stranger, who will hold undivided, and in common with the other owner." *Tindell*, 37 S.W. at 1106 (quoting *Den*, 10 N.J.L. at 45); *see McLeroy v. McLeroy*, 40 S.W.2d 1027, 1028 (Tenn. 1931) (citations omitted) ("One joint tenant can convey his interest in land without the joinder of the other tenant."); *McGhee v. Henry*, 234 S.W. 509, 509-10 (Tenn. 1921) (indicating that, unlike in a tenancy by the entirety, a joint tenant "can separate his interest from the other"); *Knight v. Knight*, 458 S.W.2d 803, 807 (Tenn. Ct. App. 1970) (noting that "inalienability is an incident only of estates by the entireties"); *see also Bunch*, 1998 WL 46217, at *2 (relying in part on *Tindell* and *McLeroy* to hold that, absent agreement to the contrary, a joint tenancy may be partitioned at the request of only one of the joint tenants).

The severability of a common-law joint tenancy is based on the premise that, once any of the four unities is destroyed, the estate by definition is no longer a joint tenancy; it becomes a tenancy in common. *See Tindell*, 37 S.W. at 1106 (citation omitted); *see also United States v. Craft*, 535 U.S. 274, 280 (2002). When one joint tenant severs his interest by conveying it to a third person, the joint tenancy becomes a tenancy in common between the third person and the remaining joint tenant(s), and the right of survivorship is destroyed. *See* 2 TIFFANY REAL PROP. § 425 & n.64.10 (3d ed.); 20 AM. JUR. 2d *Cotenancy and Joint Ownership* § 21 (2015). One commentator has explained:

"In the ancient language of the law, joint tenants were said to hold *per my et per tout*, or in plain words, 'by the moiety or half and by all.'" This statement, which of course is strictly accurate only in the case of there being but two joint tenants, serves to indicate the conception of a joint tenancy as one which allows each owner to hold a particular share which he may alienate, while at the same time he and the other or others hold the entire property as by a single ownership. The theoretical peculiarity of a joint tenancy at common law, and also by the law as it still generally prevails, is the coexistence of the four unities, the unity of interest, the unity of title, the unity of time, and the unity of possession, that is to say, "joint tenants have one and the same interest accruing by one and the same conveyance, at one and the same time, and held by one and the same undivided possession." The principal practical aspect of a joint tenancy consists in the fact that on the death of one of the joint tenants, no severance of his interest having theretofore occurred, the exclusive title inures to the surviving joint tenant or tenants.

From these peculiarities of ownership it follows logically, and also under the law, that *joint tenants can terminate the joint tenancy by any act which is inconsistent with its continued existence*, or which operates to destroy its essential unities or one or some of them. So to the extent of the interest affected, and therefore in toto where there are only two joint tenants, a joint tenancy is severed by any act of a joint tenant which operates to destroy one or more of its unities.

Allen, *supra*, at § 2 (emphasis added) (footnotes omitted); *see Tindell*, 37 S.W. at 1106 ("A severance of a joint tenancy may be made, and the estate thereby turned into a tenancy in common, by any one of the joint owners, at his will." (quoting *Den*, 10 N.J.L. at 45)); *see also Craft*, 535 U.S. at 280 (stating generally that, when one joint tenant conveys his interest to another, the estate is severed, which means it is "converted to a tenancy in common with each tenant possessing an equal fractional share"). Of course, "[a]n ownership interest of a tenant in common is severable" by any of the co-tenants. 20 AM. JUR. 2d *Cotenancy and Joint Ownership* § 39 (2015).

**Abolition of the Survivorship Interest in Joint Tenancies**

Eventually, the survivorship interest incident to common-law joint tenancies fell into disfavor in both America and England. R. P. Davis, Annotation, *Creation of Right of Survivorship by Instrument Ineffective to Create Estate by Entireties or Joint Tenancy*, 1 A.L.R.2d 247, § 1 (1948). One commentator suggests that hostility toward joint

tenancies began to develop partly because "Americans were coming to regard land as a commodity," rather than simply as family land. Byron D. Cooper, *Continuing Problems with Michigan's Joint Tenancy "With Right of Survivorship"*, 78 MICH. B. J. 966, 967 (1999). "A joint tenancy 'was suitable for family lands; less so, for lands of people dealing at arm's length with each other in the market.'" *Id.* (quoting LAWRENCE M. FRIEDMAN, A HISTORY OF AMERICAN LAW 235 (2d ed. 1985)). As a result of the disfavor toward survivorship rights, legislation abrogating the common-law rule "and modifying or abolishing the doctrine of survivorship has been enacted in virtually every state." Davis, *supra*, at § 1; *see Banks v. Banks*, 135 A.3d 311, 313-14 (Del. Ch. 2016) ("Legislatures in jurisdictions in this country have since curbed and even eliminated the estate of joint tenancy with right of survivorship . . . .").

A review of the early history of our nation reveals that at no time during her statehood has Tennessee recognized a survivorship interest incident to joint tenancies. Before Tennessee became a state, much of what is now Tennessee was held by North Carolina. *See* TRE HARGETT, SECRETARY OF STATE, TENNESSEE BLUE BOOK 2015-2016 506-07 (2015). The North Carolina legislature abolished the incidental right of survivorship in joint tenancies in that territory by enacting the Act of 1784, chapter 22, section 6. 1 EDWARD SCOTT, LAWS OF THE STATE OF TENNESSEE, INCLUDING THOSE OF NORTH CAROLINA NOW IN FORCE IN THIS STATE FROM THE YEAR 1715 TO THE YEAR 1820, INCLUSIVE 294 (Heiskell & Brown 1821); *see Gaines v. Catron*, 20 Tenn. (1 Hum.) 514, 515-16 (1840); *Bennett*, 179 S.W. at 631; *Scholze v. Scholze*, 2 Tenn. App. 80, 90 (1925). The Act of 1784 provided:

> [I]n all estates real and personal, held in joint tenancy, the part or share of any tenant dying shall not for the future descend or go to the surviving tenant or tenants, but shall descend or be vested in the heirs, executors, administrators or assigns respectively of the tenant so dying, in the same manner as estates held by tenancy in common, any law usage or custom to the contrary notwithstanding . . . .

Scott, *supra*, at 294. The explicit purpose of the North Carolina legislation was to prevent "manifest injustice to the family of [the co-tenant] who may happen to die first." *Id.* In 1789, when North Carolina ratified the new Constitution of the United States, it ceded its western lands to the federal government; the territory ceded included much of what is now Tennessee. HARGETT, *supra*, at 507; *see Fogg v. Williams*, 39 Tenn. (2 Head) 474, 478-79 (1859); *Overton's Lessee v. Campbell*, 6 Tenn. (5 Hayw.) 165, 168 (1818). When Tennessee became a state a few years later in 1796, Tennessee's first Constitution and the cession act of North Carolina made North Carolina's Act of 1784 the

law in Tennessee.[6]  *Shepherd Fleets, Inc. v. Opryland USA, Inc.*, 759 S.W.2d 914, 915 (Tenn. Ct. App. 1988).

The above-quoted provision in North Carolina's Act of 1784 remained the law in Tennessee until our General Assembly enacted Tennessee's own organized Code system—the Code of 1858—which repealed and replaced all prior existing public and general acts.  *See Shepherd Fleets*, 759 S.W.2d at 915-16 (citing *State v. Miller*, 79 Tenn. 620, 625-26 (1883)).  Tennessee's Code of 1858, however, included a section substantially identical to the relevant section in the North Carolina Act of 1784, providing a seamless legislative abolition of the survivorship interest incident to joint tenancies in Tennessee.  Tenn. Code Ann. § 2010 (1858).  Over the years, this provision abolishing the survivorship interest in joint tenancies has remained the law in Tennessee.[7]  Now codified at Tennessee Code Annotated section 66-1-107, it contains language that is nearly identical to the corresponding provision in the Act of 1784:

> In all estates, real and personal, held in joint tenancy, the part or share of any tenant dying shall not descend or go to the surviving tenant or tenants, but shall descend or be vested in the heirs, executors, or administrators, respectively, of the tenant so dying, in the same manner as estates held by tenancy in common.

Tenn. Code Ann. § 66-1-107 (2015).

Although the incidental right of survivorship in joint tenancies has never existed in Tennessee, our courts have consistently recognized that property owners remain free "to expressly provide for survivorship by deed."  *Jones*, 206 S.W.2d at 803; *see also Lowry*

---

[6] Our Court of Appeals has explained:

> By the provisions of the Constitution of 1796 and the cession act of North Carolina contained in Acts 1789, Ch. 3 § 1, condition 8, all laws in force in North Carolina at the time said cession act became effective in the ceded territory which became [Tennessee] and laws in effect in the ceded territory at the time of the adoption of the 1796 Constitution became effective in Tennessee, except those inconsistent with the Constitution.

*Shepherd Fleets, Inc. v. Opryland USA, Inc.*, 759 S.W.2d 914, 915 (Tenn. Ct. App. 1988).

[7] The same provision was later included in Shannon's Code of 1896 at section 3677.  *See, e.g.*, *Myers v. Comer*, 234 S.W. 325, 326 (Tenn. 1921); *Bennett*, 179 S.W. at 631; *Scholze v. Scholze*, 2 Tenn. App. 80, 90 (1925).

*v. Lowry*, 541 S.W.2d 128, 131 (Tenn. 1976); *Peebles*, 443 S.W.2d at 471. As a result, any survivorship interest in a transfer of concurrent ownership must "result from the terms of the grant rather than by operation of law." *Peebles*, 443 S.W.2d at 470 (quoting *Jones*, 206 S.W.2d at 591). In other words, Tennessee Code Annotated section 66-1-107 does not apply "where the instrument creating the estate either by express language or necessary implication manifests an intention to create a right of survivorship." *Id.* at 471.

The abolition of the incidental survivorship interest in joint tenancies rendered the four unities irrelevant to the question of whether a conveyance creates a joint tenancy or a tenancy in common. This Court has explained:

> [T]he common-law unities requisite to joint tenancy have become academic as applied to [a joint tenancy], a tenancy in common resulting if no contrary intent is expressed, whether or not the unities are present. When the intent to establish an estate by survivorship is clear, the existence or nonexistence of the unities becomes immaterial upon the idea that the rule fails where the reason fails.

*Peebles*, 443 S.W.2d at 470 (quoting *Jones*, 206 S.W.2d at 803). Because joint tenancies no longer include a survivorship interest by operation of law, both joint tenants and tenants in common have essentially the same rights, which are the "right to use, to exclude, and to enjoy a share of the property's income." *Craft*, 535 U.S. at 280 (citing 2 WILLIAM BLACKSTONE, COMMENTARIES 180, 183 (1776)); *see* 20 AM. JUR. 2d *Cotenancy and Joint Ownership* § 41 (2015). In sum, at common law, the right of survivorship was the primary difference between a joint tenancy and a tenancy in common, *see Craft*, 535 U.S. at 280, but under Tennessee property law, that difference has never existed in the common-law tenancies. *See* Tenn. Code Ann. § 66-1-107. Under Tennessee law, if parties seek to include a right of survivorship in either a joint tenancy or a tenancy in common, they must do so by including clear language to that effect in the granting instrument.

### Severability of Joint Tenancy with Express Right of Survivorship

As we have explained, a common-law joint tenancy can be severed, and the right of survivorship destroyed, by the unilateral action of any joint tenant.[8] *See McLeroy*, 40

---

[8] In this appeal, Son acknowledges that a common-law joint tenancy "may be severed by the independent act of one of the tenants, such as conveyance to a third party by either party, or by levy and sale on an execution against one of the tenants." Appellee's Brief at 6.

S.W.2d 1027, 1028 (Tenn. 1931); *McGhee*, 234 S.W. at 509-10; *Tindell*, 37 S.W. at 1106 (quoting *Den*, 10 N.J.L. at 45). Because common-law joint tenancies are not recognized in Tennessee, however, the question becomes whether the common-law doctrine of severance applies to a joint tenancy in which an express right of survivorship has been created by the granting instrument. This is a matter of first impression.

Typically, when addressing an issue of first impression, we look to similar cases in other jurisdictions for guidance. Here, that task is complicated by the fact that each state's property law is comprised of a combination of caselaw and specialized statutes; the relevant caselaw can date back more than 200 years, and the property-law statutes have evolved over the same period. In looking to our sister states for guidance, we will consider first whether a given state's overall body of property law aligns with ours and then consider specifically whether its treatment of the issue presented in this appeal is consistent with Tennessee property law.

As noted above, most states have enacted statutes abolishing the common-law rule that a conveyance to two or more persons will result in a joint tenancy based on the existence of the four unities. Some states accomplished this by enacting a statute similar to the Act of 1784 and Tennessee's section 66-1-107, in that they prescribe a manner of descent, requiring the interest of a deceased joint tenant to pass to his heirs (rather than to the co-tenant) at his death "in the same manner as estates held by tenancy in common." Tenn. Code Ann. § 66-1-107. These statutes sometimes explicitly permit the creation of a survivorship interest by the use of express language in the granting instrument.[9] Other

---

[9] Similar to the law in Tennessee, Pennsylvania has a statute that provides for the proper manner of descent, but Pennsylvania common law instructs that the survivorship interest can be created by express language. *See* 68 Pa. Stat. Ann. § 110 (removing survivorship interest); *In re Estate of Quick*, 905 A.2d 471, 477 (Pa. 2006) (recognizing that parties can include survivorship interest by express language). Several other states both prescribe the manner of descent and also expressly permit the creation of a survivorship interest by express language: Ala. Code § 35-4-7 (2014); Fla. Stat. § 689.15 (2016); Ky. Rev. Stat. §§ 381.120, 381.130 (West 2002); Miss. Code Ann. § 89-1-7 (2011);Va. Code Ann. §§ 55-20, 55-20.1, 55-21 (2012); W. Va. Code §§ 36-1-19, 36-1-20 (2011).

The dissent points to statutes in Oregon and Ohio that also allow the creation of a survivorship estate by express language. Unlike Tennessee, however, Oregon and Ohio do not have statutes that provide for the manner of descent in joint tenancies; in fact, neither Oregon nor Ohio recognizes common-law joint tenancy at all. Or. Rev. Stat. § 93.180(3) ("[J]oint tenancy in real property is abolished"); *Spitz v. Rapport*, 604 N.E.2d 801, 803 (Ohio Ct. App. 1992) (noting that "there is no common-law joint tenancy with right of survivorship in Ohio").

states' statutes provide more directly that a joint tenancy may be created only by using specific language indicating that a joint tenancy was intended by the parties.[10]

States address the severability of joint tenancies by both statutory law and common law. Statutes on the topic generally permit the severance of a joint tenancy and provide the manner in which such a severance may be effected.[11] But even states that have not enacted legislation on the severability of joint tenancies have nearly unanimously followed the common-law rule of severance, recognizing that a joint tenant may unilaterally sever the joint tenancy and destroy the survivorship interest, even when the survivorship interest was created by express language in the granting instrument. As the District of Columbia has recognized, "The applicable rule in a large majority of jurisdictions is that either party to a joint tenancy may sever that tenancy by unilaterally disposing of his interest, that the consent of the other tenant is not required, and that the transfer converts the estate into a tenancy in common."[12] *Estate of Gulledge*, 673 A.2d

---

[10] The following states' statutes require express language in order to create a joint tenancy: Ark. Code Ann. § 18-12-603 (2015); Colo. Rev. Stat. § 38-31-101 (2016); Del. Code Ann. tit. 25 § 701 (2009); D.C. Code § 42-516 (2012); Haw. Rev. Stat. Ann. § 509-1 (2008 & Supp. 2015); Idaho Code Ann. § 55-104 (2012); Ill. Comp. Stat. 1005/1 (2014); Ind. Code § 32-17-2-1 (2016); Iowa Code § 557.15 (2015); Kan. Stat. Ann. § 58-501 (2005); Me. Rev. Stat. Ann. tit. 33 §159 (1999 & Supp. 2015); Md. Code Ann. § 2-117 (West 2015); Mass. Gen. Laws ch. 184 § 7 (2014); Minn. Stat. § 500.19 (2014); Mo. Rev. Stat. § 442.450 (2000); Mont. Code Ann. §§ 70-1-307, -314 (2015); Nev. Rev. Stat. § 111.065 (2015); N.H. Rev. Stat. Ann. § 477:18 (2013); N.J. Stat. Ann. § 46:3-17 (2015); N.M. Stat. Ann. § 47-1-36 (1995); Okla. Stat. tit. 60 § 74 (2010); R.I. Gen. Laws § 34-3-1 (2011); S.D. Codified Laws § 43-2-12 (2004 & Supp. 2016); Vt. Stat. Ann. tit. 27 § 2 (2012).

[11] These statutes specifically address the severability of a joint tenancy: Ariz. Rev. Stat. Ann. § 33-431(E) (2014) (indicating that the right of survivorship may be terminated by filing an "affidavit terminating right of survivorship"); Cal. Civ. Code § 683.2 (West 2007 & Supp. 2016) (describing ways to sever a joint tenancy); Conn. Gen. Stat. § 47-14c (2015) (indicating that a transfer of one joint tenant's interest severs the joint tenancy as to his interest); Ga. Code Ann. § 44-6-190 (2010 & Supp. 2016) (abolishing survivorship interest, unless expressly stated, and providing how a joint tenant may sever his interest); N.Y. Real Prop. Law § 240-c (McKinney 2016) (describing all manner of joint tenancy severance); N.C. Gen. Stat. § 41-2(a) (2015) (specifying that "conveyance to a third party" will make a joint tenancy a tenancy in common); S.C. Code Ann. § 27-7-40 (2007) (providing rules on creation of joint tenancy and severance); Wash. Rev. Code Ann. § 64.28.010 (2014) (stating that common-law right to sever is recognized).

[12] At least three jurisdictions that adhere to the majority rule have held that, while a "joint tenancy with a right of survivorship" is severable by one joint tenant, a "tenancy in common with a right of survivorship" is not. *See Durant v. Hamrick*, 409 So. 2d 731, 738 (Ala. 1981); *Smith v. Cutler*, 623 S.E.2d 644, 647 (S.C. 2005); *Hass v. Hass*, 21 N.W.2d 398, 402 (Wis. 1945). Notably, these jurisdictions do not recognize tenancy by the entirety, so recognizing an indestructible "tenancy in common with a

1278, 1279-80 (D.C. 1996) (citations omitted); *see also Wood v. Pavlin*, 467 S.W.3d 323, 324-25 (Mo. Ct. App. 2015) ("A right to sever also is our national norm."); *Herring v. Carroll*, 300 S.E.2d 629 (W. Va. 1983) ("It is generally, if not universally, recognized elsewhere that a joint tenant may convey his undivided interest in real property to a third person.").

Michigan law, on which the trial court below based its decision, is unique. It permits the creation of either a common-law joint tenancy or a joint tenancy with full rights of survivorship; Michigan recognizes that the former is severable, but the latter is not. Cooper, *supra*, at 969 (describing Michigan's law as "anomalous"). A brief review of Michigan law will illustrate this point.

The "standard" joint tenancy in Michigan "is of the type typically recognized in various jurisdictions," and it is characterized by the existence of the four unities. *Albro v. Allen*, 454 N.W.2d 85, 87 (Mich. 1990). The Michigan Supreme Court explained that, "[i]n the standard joint tenancy, the right of survivorship may be destroyed by severance of the joint tenancy," which can happen "by an act of the parties, by conveyance by either party, or by levy and sale on an execution against one of the parties." *Id.* (citations omitted). A joint tenancy with full right of survivorship, however, is created when the granting instrument includes "express words of survivorship . . . in addition to those creating a joint tenancy." *Id.* at 88. This "joint tenancy with full rights of survivorship" under Michigan law is considered to be "a joint life estate with dual contingent remainders." *Id.* (citing 1 CAMERON, MICHIGAN REAL PROPERTY LAW, § 9.11, at 274); *see also* Or. Rev. Stat. § 93.180(2) ("A declaration of a right to survivorship creates a tenancy in common in the life estate with cross-contingent remainders in the fee simple."). It is "described as 'a moiety to each [party] for life, with remainder to [the survivor] in fee.'" *Albro*, 454 N.W.2d at 88 (quoting *Schultz v. Brohl*, 74 N.W. 1012, 1013 (Mich. 1898)). When viewed in this manner, the contingent remainder following the joint life estate becomes inalienable based on Michigan Compiled Laws section 554.32, which provides: "No expectant estate can be defeated or barred by an alienation or other act of the owner of the intermediate or precedent estate, nor by any destruction of such precedent estate by disseizin, forfeiture, surrender, merger, or otherwise." *Id.* at 90 (citing then-current Mich. Comp. Laws § 554.32); *accord Wengel v. Wengel*, 714 N.W.2d 371, 378 (Mich. Ct. App. 2006) (relying on *Albro*). Thus, in Michigan, when the survivorship interest is created by express language in a joint tenancy, the co-tenants are

right of survivorship" allows married and non-married parties to create a tenancy similar to a tenancy by the entirety. *See Dougherty v. Hovater*, 447 So. 2d 185, 186 (Ala. 1984); *Smith*, 623 S.E.2d at 646; *Perrigo v. Richardson's Estate (In re Richardson's Estate)*, 282 N.W. 585, 587 (Wis. 1938).

not permitted to take unilateral action to sever the tenancy or destroy the survivorship interest.[13]

Oregon law is similar to the law in Michigan in that Oregon courts view a joint tenancy with an express right of survivorship as conveying "concurrent interests for life with contingent remainders which would vest in the survivor," *Halleck v. Halleck*, 337 P.2d 330, 337 (Or. 1959) (citing *Erickson v. Erickson*, 115 P.2d 172, 175 (Or. 1941)). Oregon, however, interprets the conveyance of a "joint tenancy" in this way because it has *by statute* abolished the joint tenancy form of ownership. Or. Rev. Stat. § 93.180(3). For example, in *Halleck,* a father granted real property to himself and his son, "not as tenants in common but with the right of survivorship." *Halleck*, 337 P.2d at 337. After the father died, the father's new wife asserted that she owned the property pursuant to the father's (her husband's) will, but the son maintained that he owned the property based on his survivorship interest. *Id.* at 331-32. The Oregon Supreme Court held in favor of the son. *Id.* at 338. It reasoned that, because joint tenancies were abolished by statute in Oregon, a conveyance granting an express right of survivorship in co-tenants creates "concurrent interests for life with contingent remainders which would vest in the survivor." *Id.* at 337 (citing *Erickson*, 115 P.2d at 179). Like the Michigan Supreme Court in *Albro*, the Oregon Court in *Halleck* held that the contingent remainder in the conveyance was indestructible: "[T]his power to defeat the survivorship interest does not extend to co[-]tenants who hold concurrent life estates with contingent remainders. *The contingent remainder which each co-tenant has cannot be defeated by any act of his cotenant*." *Id.* at 338 (emphasis added). For these reasons, the Oregon Court held that, upon the death of the father, the son owned the property in fee simple. *Id.*; *accord Holbrook v. Holbrook*, 403 P.2d 12, 13-14 (Or. 1965).

From our review of the authorities cited herein, it appears that Michigan and Oregon represent an extreme minority approach to the severability of joint tenancies.[14] In

---

[13] The North Dakota Supreme Court has recognized that "joint tenancy may be described as a life estate with each joint tenant having a contingent remainder in fee—the contingency being based upon survival of the other joint tenant or tenants," *Jamestown Terminal Elevator, Inc. v. Knopp*, 246 N.W.2d 612, 613 (N.D. 1976). Unlike Michigan, however, North Dakota has also held that "[o]ne joint tenant may convey his entire interest in the property to a third person," *Robar v. Ellingson*, 301 N.W.2d 653, 662 (N.D. 1981).

[14] The dissent describes the law in Ohio as being similar to the laws in Michigan and Oregon because under Ohio law "joint tenancies with right of survivorship are protected by statute." The legal landscape in Ohio, however, is substantially different from that in either Michigan or Oregon. Ohio rejects a "joint tenancy" form of ownership altogether and instead has created a unique "survivorship tenancy" by statute; the statute creating a "survivorship tenancy" even provides a fill-in-the-blank

the vast majority of jurisdictions, either by statute, by common law, or a combination thereof, a party to a joint tenancy with an express right of survivorship may sever the tenancy by unilateral action and destroy the survivorship interest and thereby convert the estate into a tenancy in common. In fact, courts in the states that have statutes most similar to Tennessee's section 66-1-107 have held that a joint tenancy with an express right of survivorship is severable by the unilateral actions of a joint tenant. *See, e.g.*, *Nunn v. Keith*, 268 So. 2d 792, 797 (Ala. 1972); *Kozacik v. Kozacik*, 26 So. 2d 659, 661 (Fla. 1946); *Newton v. Newton*, 365 S.W.3d 565, 569 (Ky. Ct. App. 2011); *Ayers v. Petro*, 417 So. 2d 912, 914 (Miss. 1982); *In re Estate of Quick*, 905 A.2d 471, 477 (Pa. 2006); *Williams v. Williams*, 27 A.2d 176, 176 (R.I. 1942); *Leonard v. Boswell*, 90 S.E.2d 872, 878 (Va. 1956); *Harris v. Crowder*, 322 S.E.2d 854, 856-57 (W. Va. 1984).

Moreover, neither Michigan nor Oregon law is consistent with the heritage of property law in Tennessee. The tenets of Tennessee property law have developed over the years almost exclusively through the common law.[15] While Tennessee courts have not directly addressed the severability of a joint tenancy with an express right of survivorship, general statements made by Tennessee courts have uniformly indicated that joint tenancies created in this state are severable. A number of Tennessee decisions have said specifically that a joint tenant can, "at his pleasure, dispose of his share, and convey it to a stranger, who will hold undivided, and in common with the other owner." *Tindell*, 37 S.W. at 1106 (quoting *Den*, 10 N.J.L. at 45); *see McLeroy*, 40 S.W.2d at 1028; *McGhee*, 234 S.W. at 509-10. Along the same lines, in a case in which two unmarried persons attempted to create the equivalent of a tenancy by the entirety, the court held that they could not create an inalienable estate because "inalienability is an incident only of estates by the entireties." *Knight v. Knight*, 458 S.W.2d 803, 807 (Tenn. Ct. App. 1970). This Court has also stated that the North Carolina Act of 1784 did not "otherwise affect a

---

"survivorship deed" to be used when forming this type of tenancy. Ohio Rev. Code Ann. §§ 5302.17, 5302.20(A). Ohio caselaw clarifies that a survivorship tenancy can be created only by contract. *See Spitz*, 604 N.E.2d at 803. Addressing this unique "survivorship tenancy," the Ohio statutory scheme specifies that the conveyance from a survivorship tenant to a third party does not sever the tenancy or otherwise "alter the interest in the title of any of the other survivorship tenants who do not join in the conveyance." Ohio Rev. Code Ann. § 5302.20(C)(2); *see Spitz*, 604 N.E.2d at 803 ("There is no common-law right to unilaterally terminate a joint tenancy with right of survivorship in Ohio, because there is no common-law joint tenancy with right of survivorship in Ohio."). Given the fundamental difference between Ohio's approach to the issue and the law in Tennessee, this Court would be ill-advised to rely on Ohio law to determine the issue presented in this case.

[15] The fact that Tennessee property law is comprised almost exclusively of principles that have developed through our common law magnifies the importance of precision in our common-law rules. *See, supra*, notes 11, 12, & 13.

joint tenancy, with the right of survivorship." *McLeroy*, 40 S.W.2d at 1028 (emphasis added). In other words, express language including a right of survivorship in a joint tenancy results in the same estate as a common-law joint tenancy, not an entirely different category of tenancy as would be the case under Michigan law.[16]

As Son points out, many of the references in Tennessee cases to the severability of joint tenancies with express right of survivorship constitute *obiter dicta*, explanations of general principles of property law and descriptions of the differences among the tenancies that were not essential to the holdings rendered. For example, *Taul v. Campbell* addressed whether a married couple owned property as tenants by the entirety when the wife, who owned the subject property before she was married, transferred the property to a straw man who immediately transferred the property to the husband and wife as a married couple. 15 Tenn. (7 Yer.) at 319. In concluding that the husband and wife took the property as tenants by the entirety, the Court compared tenancies by the entirety with joint tenancies. *Id.* at 336-37. In the course of its reasoning, the Court explained: "[O]ne of the incidents of a joint tenancy was the right of each of the joint tenants to alienate his interest, thereby to sever the joint tenancy and render his co-tenant in common with the alienee," but "neither husband nor wife can, by common law, make any alienation of an estate conveyed to them during coverture, so as to affect the entire right of the other on his or her surviving." *Id.* at 336 (quoting with approval the reasoning in *Rogers v. Grider*, an unpublished case decided by the Supreme Court of Kentucky in 1833). Based on this premise, the Court concluded that a "husband and wife take one indivisible estate." *Id.* at 337.

Similarly, in *Tindell v. Tindell*, the appellate court addressed whether the property at issue was owned by a husband and wife as tenants by the entirety. 37 S.W. at 1105-06. In concluding that the parties were tenants in common, the court included a description of the differences between tenancy by the entirety and joint tenancy, comparing each aspect in detail.[17] *Id.* at 1106. The court noted that, while a tenancy by the entirety is inalienable by either spouse, "severance of a joint tenancy may be made, and the estate thereby turned into a tenancy in common, by any one of the joint owners, at his will." *Tindell*, 37 S.W. at 1106 (quoting Den, 10 N.J.L. at 45).

---

[16] We need not decide in this appeal whether there is any method under Tennessee law for parties to create a non-severable joint tenancy.

[17] Much of the *Tindell* Court's comparison of the two tenancies came directly from *Den v. Hardenbergh*, 10 N.J.L. 42, 45 (1828). *Tindell*, 37 S.W. at 1106 ("We cannot do better than to quote liberally from [*Den v. Hardenbergh*.]").

While some of these statements may not have been direct holdings, in the absence of a definitive ruling from this Court, practitioners and courts have at times relied on them. For example, in *Bunch v. Bunch*, the Court of Appeals relied on *dicta* in *Tindell* and *McLeroy* to determine whether a joint tenancy can be partitioned. *Bunch v. Bunch*, No. 02A01-9705-CH-00106, 1998 WL 46217, at *2 (Tenn. Ct. App. Jan. 8, 1998). In *Bunch*, three brothers inherited the family farm from their father. *Id. at *1. The brothers later created a joint tenancy with an express right of survivorship in the real property "in the belief that it would help keep the property in the Bunch family." *Id.* Years later, one of the brothers filed a partition action seeking to have the property sold and the proceeds divided equally; the other two brothers objected. *Id.* The trial court ordered a sale of the property and other relief. *Id.* On appeal, the two defendant brothers argued, among other things, that a joint tenancy with an express right of survivorship is not subject to partition because joint tenancies no longer exist. *Id.* at *1-2. Because joint tenancies no longer exist, they argued, the partition statute could not have been "intended to allow the partition of joint tenancies with the right of survivorship." *Id.* at *2. The appellate court disagreed, reasoning that only the incident right of survivorship was abolished in joint tenancies; the parties were still permitted to create a right of survivorship through clear language in the granting instrument. *Id.* (citing *Jones*, 206 S.W.2d at 801). The court concluded, "Therefore, the legislature cannot be said to have disallowed the right of joint tenants to partition on the basis that such an estate does not properly exist." *Id.*

The *Bunch* court then turned to the substantive issue, namely, whether a joint tenant may partition a joint tenancy with an express right of survivorship over the objection of the other joint tenants. *Id.* The appellate court sought guidance from cases that had "discuss[ed] this issue tangentially or in dicta." *Id.* It reasoned:

> For example, in distinguishing a joint tenancy from a tenancy by the entirety, the Tennessee Court of Chancery Appeals stated "*[a] severance of a joint tenancy may be made, and the estate thereby turned into a tenancy in common, by any one of the joint owners, at his will.*" *Tindell v. Tindell*, 37 S.W. 1105, 1106 (Tenn. Ch. App. 1896). Similarly, in addressing the main issue of whether an interest in property passed to one joint tenant at the death of the other, the Tennessee Supreme Court stated: "*One joint tenant can convey his interest in land without the joinder of the other tenant.*" *McLeroy*, 163 Tenn. at 127, 40 S.W.2d 1027.

*Id.* (emphases added). The *Bunch* court also relied on *Bierce v. James*, 11 S.W. 788 (Tenn. 1889), in which the Tennessee Supreme Court noted that the partition laws at all times made partition available to tenants in common, joint tenants, and those similarly

situated. *Id.* at *3 (quoting *Bierce*, 11 S.W. at 789). Although parties are free to enter into agreements not to partition the property, the *Bunch* court reasoned, the parties had not done so in that case. *Id.* Thus, "[o]n the authority of *Bierce*, *Tindell*, and *McLeroy*," the appellate court held, "an estate held by joint tenants with the right of survivorship may be partitioned, or sold for partition in an appropriate case, at the instance of one or more joint tenants, whether or not all joint tenants join in the petition." *Id.*; *accord Pack v. Ponak*, No. M2000-02285-COA-R3-CV, 2001 WL 703883, at *1 (Tenn. Ct. App. June 22, 2001) (following *Bunch* and reversing grant of summary judgment because there was a question of fact regarding the possible existence of an agreement not to dispose of the property).

These cases show that, despite the fact that Tennessee has never recognized common-law joint tenancy, the common-law doctrine of severance is woven into the fabric of Tennessee property law. In contrast to Michigan law, Tennessee courts have not viewed common-law joint tenancies and joint tenancies with express rights of survivorship as different tenancies. Tennessee appellate courts have not deviated from the premise that a joint tenancy is severable by the unilateral action of a co-tenant. This aligns with the view of the vast majority of our sister states.

In choosing to use Michigan law as a guide, the trial court below viewed Ms. Bryant's express creation of survivorship interests in herself and Son in contractual terms and emphasized that one co-tenant in a joint tenancy should not be permitted to unilaterally extinguish the survivorship interest of the remaining co-tenant:

> The express language in the granting instrument creating the joint tenancy with the right of survivorship has many of the characteristics of a contract between the cotenants. Each cotenant has the right to own the fee title upon the death of the other cotenant. One cotenant should not have the right to destroy that right of survivorship by his/her unilateral action.

*Bryant*, 2015 WL 5695207, at *2 (quoting the trial court). On appeal, Son presses us to adopt this reasoning, and the dissent advocates it as well.

There is perhaps no area of the law in which predictability and consistency are more important than property law. In choosing whether to hold that a joint tenancy with express right of survivorship may be severed, our considerations must include which choice would be most consistent with existing Tennessee caselaw and the majority view in our sister states. With this landscape in mind, we decline to adopt Michigan's

- 20 -

approach.[18] We join the majority of jurisdictions in following the common-law doctrine of severance and hold that a joint tenancy with an express right of survivorship may be severed "and the estate thereby turned into a tenancy in common, by any one of the joint owners, at his will." *Tindell*, 37 S.W. at 1106.

The dissent acknowledges that a majority of jurisdictions follow the view we adopt herein. Nevertheless, the dissent imagines a scenario in which Son invested in improvements or repairs to the Property, and further imagines that the first quitclaim deed (executed by only Ms. Bryant) contains language used by "Ms. Bryant and her son" and reflects "Ms. Bryant and her son's clear intent," after which Ms. Bryant transferred her property interest to Grandson and denied Son "the full value of any investments he may have made in the property." Based on this imagined scenario, the dissent advocates affirming the trial court.

Respectfully, there is no basis in this record for the dissent's hypothetical augmentation of the underlying facts. One could just as easily imagine a set of facts sympathetic to Grandson, in which Ms. Bryant turned to Grandson for help and, to assist her, he invested in improvements and repairs to the Property. Under the ruling urged by the dissent, Ms. Bryant's death would result in Grandson receiving nothing whatsoever for "any investments he may have made in the property." A desire to give one party or the other the "full value" of imagined "investments" in the Property should not factor into this Court's decision.

More importantly, it would be imprudent for this Court to adopt an extreme minority view on a point of property law in order to achieve a particular result in a narrow set of hypothetical facts. No matter how well-intended, the Court must not indulge the temptation to rule based on the desire to reach a particular result in a given case. In no area of the law is this principle more imperative than property law.

---

[18] We note that Michigan's unique approach to the law on joint tenancies has been the subject of criticism. One commentator pointed out that scholars have struggled to describe the two different types of joint tenancies under Michigan law and remarked that the "[t]he Michigan doctrine clearly creates traps for the unwary." Cooper, *supra*, at 966-68 ("Even the leading treatise on American property law currently being published, *Powell on Real Property*, gets the Michigan law wrong . . . ."); *see also Nunn v. Keith*, 268 So. 2d 792, 796-97 (Ala.1972) (overruling precedent and holding that joint tenancies with an express right of survivorship are severable); *Greiger v. Pye*, 297 N.W. 173, 175 (Minn. 1941) (noting that the Michigan view on joint tenancies "does not seem to accord with the decisions in other jurisdictions"); *Wood v. Pavlin*, 467 S.W.3d 323, 324-25 (Mo. Ct. App. 2015) (rejecting the Michigan doctrine on joint tenancies and citing Cooper, *supra*, at 966).

Our decision on the single issue presented in this case must be made in a holistic manner, taking into consideration the entire legal landscape of Tennessee's property laws.[19] We are mindful that lawyers and courts must extrapolate from our ruling and apply it, along with other property law principles, to resolve legal issues presented in countless factual circumstances. By following the vast majority of jurisdictions on the issue raised in this case, we enable them to refer to the body of law in those other jurisdictions when presented with an unsettled question or an issue of narrow application. In this way, our decision does not "diminish[] the effectiveness of deeds creating joint tenancies with right of survivorship," but instead gives parties predictability and consistency in the formation and interpretation of those deeds.

For all of these reasons, we join the majority of jurisdictions in following the common-law doctrine of severance. We now apply this holding to the facts of the instant case.

### Intent of the Parties

Having resolved that joint tenancies with an express right of survivorship are severable by the unilateral act of one co-tenant, we turn to the language of the deeds to ascertain the parties' intent in this case. In construing a deed, a court's primary goal "is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances." *Griffis v. Davidson Cnty. Metro. Gov't*, 164 S.W.3d 267, 274 (Tenn. 2005) (citations omitted); *see Dalton v. Eller*, 284 S.W. 68, 70 (Tenn. 1926); *Bennett v. Langham*, 383 S.W.2d 16, 18 (Tenn. 1964); *Hutchison v. Board*, 250 S.W.2d 82, 84 (Tenn. 1952); *see also Runions*, 207 S.W.2d at 1019 (reasoning that "the conveyance should operate, as nearly as possible, to produce the effect intended by the parties"). "Words of a deed are to be given their common meaning unless a technical meaning is clearly intended." *Griffis*, 164 S.W.3d at 275; *see Pryor v. Richardson*, 37 S.W.2d 114, 114 (Tenn. 1931) ("Technical rules in the construction of conveyances in this state have been abandoned, and, where possible, the intention of the grantor, as ascertained from a consideration of the entire instrument, is given effect."). A grantor's intent with respect to the type of ownership created may be established by extrinsic evidence to "place ourselves as nearly as possible in the place of the grantor." *Griffis*, 164 S.W.3d at 275; *see Griffin*, 632 S.W.2d at 535; *Dalton*, 284 S.W. at 70.

---

[19] The dissent concludes with a call for action by our Legislature to consider legislation "to protect a co-tenant's investment in property" and allow severance only upon the agreement of both co-tenants. Respectfully, considering the complexity of Tennessee property law and the fact that it is unlike the law in any of the states upon which the dissent relies, we caution that any such legislation could be problematic.

To ascertain Ms. Bryant's intent in her conveyances of the subject Property, we look first to the deeds at issue, the June 2009 deed the September 2010 deed. To review, Ms. Bryant executed the June 2009 quitclaim deed, conveying the Property to Son and herself, "for the purpose of creating a joint tenancy with right of survivorship." It is undisputed that, under Tennessee law, this language was sufficient to create a joint tenancy with an express right of survivorship. Thus, under the June 2009 deed, Ms. Bryant and Son became joint tenants, each owning a proportional (one half) share, with the survivor to take the Property in fee simple upon the death of the other. *See Tindell*, 37 S.W. at 1106.

Ms. Bryant later executed the September 2010 deed, which purported to "hereby quitclaim undivided interest, right, and title" to the Property to Grandson. From this language, it is unclear whether Ms. Bryant sought to convey to Grandson the whole property in fee simple or her own undivided interest.[20] Regardless, Ms. Bryant could convey no more than what she owned. In Tennessee, a deed that seeks to grant an interest in excess of what the grantor owns "will be void only as to the excess and will be construed as a conveyance of that which it was in [her] power to convey." *Sloan v. Sloan*, 184 S.W.2d 391, 392 (Tenn. 1945).

As we have explained, under the common-law doctrine of severance, when one co-tenant in a joint tenancy conveys his or her interest to a third person, the joint tenancy is severed; it becomes a tenancy in common between the third person and the remaining joint tenant, and the right of survivorship is destroyed.[21] *See* 2 TIFFANY REAL PROP. § 425 & n.64.10 (3d ed.); 20 AM. JUR. 2d *Cotenancy and Joint Ownership* §§ 21-22 (2015); Allen, *supra*, at 918, § 2; *see also Tindell*, 37 S.W. at 1106. Thus, by transferring all of her interest in the Property to Grandson without limitation, Ms. Bryant severed the joint tenancy with Son.

In reaching the opposite conclusion, the Court of Appeals reasoned that the reference to the June 2009 deed in the derivation clause of the September 2010 deed

---

[20] The deed states that Ms. Bryant does "hereby quitclaim undivided interest." The interpretive problem is whether she meant to convey "an" undivided interest or "her" undivided interest, this adjective being omitted from the deed.

[21] For a discussion on other actions by a joint tenant that would sever the joint tenancy, *see generally* W. W. Allen, *What Acts By One or More of Joint Tenants Will Sever or Terminate the Tenancy*, 64 A.L.R.2d 918 (1959).

showed Ms. Bryant's intent to transfer only her lifetime interest and a contingent remainder to Grandson. *See Bryant*, 2015 WL 5695207, at *4. We must respectfully disagree with this interpretation. The derivation clause cited by the appellate court is required in any "writing affecting interests in real property" before it can be registered; we do not view it as an indication of Ms. Bryant's intent to limit the interest conveyed to Grandson. *See* Tenn. Code Ann. § 66-24-110(a) (2015). Accordingly, we hold that Ms. Bryant's conveyance of her interest in the Property to Grandson severed her joint tenancy with Son. Son and Grandson thereby became tenants in common, and the survivorship interest formerly held by both Son and Ms. Bryant was destroyed.

Consequently, we must conclude that the trial court and the Court of Appeals both erred in holding that Son was entitled to summary judgment. Accordingly, we reverse the trial court's grant of summary judgment in favor of Son and remand the cause to the trial court for further proceedings.

## CONCLUSION

Following the common-law doctrine of severance, we hold that a joint tenancy with an express right of survivorship may be severed by the unilateral action of one of the joint tenants and that doing so converts the estate into a tenancy in common and destroys the survivorship interests of the original joint tenants. Applying this holding to the deeds at issue in this case, we conclude that the trial court erred in granting summary judgment to Son. Accordingly, the decisions of the trial court and the Court of Appeals are reversed, and the case is remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are to be taxed to Appellee Darryl F. Bryant, Sr., for which execution may issue, if necessary.

_____
HOLLY KIRBY, JUSTICE